**F I L E D**
United States Court of Appeals
Tenth Circuit

MAY 14 2001

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JIMMY SEARLES,

      Plaintiff - Appellee,

v.

DURWARD A. VAN BEBBER,
Administrative Chaplain, Hutchinson
Correctional Facility,

      Defendant - Appellant.

---

UNITED STATES OF AMERICA,

      Intervenor - Amicus Curiae.

Nos. 99-3076 & 99-3279

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. CV-96-3515-KHV)**

---

Scott C. Nehrbass (Gregory T. Wolf and Jason E. Pepe, with him on the briefs), Shook, Hardy & Bacon L.L.P., Overland Park, Kansas, for Plaintiff - Appellee.

John M. Cassidy, Assistant Attorney General, (Carla J. Stovall, Attorney General and Hsingkan Chiang, Assistant Attorney General, with him on the briefs), Topeka, Kansas, for Defendant - Appellant.

John C. Hoyle, Attorney, Appellate Staff, Department of Justice, Washington, D.C., (David W. Ogden, Acting Assistant Attorney General, Jackie N. Williams, United States Attorney and Barbara L. Herwig, Attorney, Appellate Staff, with him on the brief) for Intervenor - Amicus Curiae.

Before **BRORBY**, **HOLLOWAY** and **BRISCOE**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff-appellee Searles, an inmate at the Hutchinson Correctional Facility of the State of Kansas (HCF), sued several prison officials alleging the defendants had violated his First Amendment right to free exercise of religion by denying him approval for a kosher diet. Defendant VanBebber, the chaplain at HCF, appeals from a jury verdict against him. The jury found no liability on the part of the other two defendants, who were the warden and the deputy warden at HCF.

**I**

**A**

Plaintiff Searles had been in the Kansas prison system since 1989 and had originally listed his religious preference as Baptist. In August 1995, plaintiff was transferred from HCF to the facility in El Dorado. Within two weeks after his arrival at El Dorado, plaintiff filed a change of religion form, declaring that he had converted to Judaism. Plaintiff requested at that time that he be placed on the "Jewish call out"[1] and

---

[1]Both parties in their briefs use the term "call out" without explanation. From the context provided by the trial testimony, however, it seems reasonably clear that the term refers to the list of inmates who are permitted to attend certain events, such as a particular religious service.

- 2 -

also requested a kosher diet. Plaintiff's requests were immediately granted by the El Dorado chaplain, even though under the applicable regulations of the Kansas Department of Corrections, an inmate wishing to join a religious group other than that which was his original preference may be required to participate in the "new" group for a period of three months to demonstrate the sincerity of his request before being permitted "to perform the practices deemed essential by the chosen religious affiliation," such as adherence to a particular diet. II Aplt. App. 466, 468.

In March 1996, plaintiff was transferred from El Dorado to the facility at Lansing. As he had done at El Dorado, he promptly requested placement on the Jewish call out and a kosher diet. As with El Dorado, the requests were promptly granted at Lansing.

On June 12, 1996, plaintiff was transferred back to HCF and, on arrival, requested a kosher diet. He did not request placement on the Jewish call out. He testified at trial that this was because he believed there was no Jewish group at HCF. Plaintiff's request was denied by defendant's predecessor because plaintiff was not on the "Jewish call-out." II Aplt. App. 446. Defendant's predecessor did send plaintiff a Request for Accommodation of Religious Practice form; apparently this form was the recognized vehicle for making a request like the one plaintiff had made. Plaintiff partially filled out the form and submitted it with a request for a supplemental diet, explaining that there were few kosher items available in the prison store. This form also stated that he had been on a kosher diet since September 1995. *Id*. at 447-49.

Plaintiff submitted a third request two months later, by which time the former chaplain had retired and defendant VanBebber had become the HCF chaplain. In this form, plaintiff noted that he had been on a kosher diet at both El Dorado and Lansing. In preparing to respond, defendant VanBebber called the El Dorado facility where plaintiff had proclaimed his Jewish faith a year earlier. The defendant did not, however, ask if plaintiff had been given a kosher diet at El Dorado; the defendant testified that had he been told that plaintiff had been getting a kosher diet for nine months before his arrival in Hutchinson, he would have approved the request. The defendant also looked in plaintiff's file, which indicated that plaintiff was Protestant. Apparently the defendant failed to look for the change of religious preference form which plaintiff had filed at El Dorado and which was in his file at HCF, nor did the defendant notice the two previous requests for a kosher diet. The defendant informed plaintiff that he would be placed on the Jewish call out and sent plaintiff another form to request religious accommodation, with this note: "Please explain your reasons for requesting a Jewish Kosher Diet at this time as you have been at HCF since June 12, 1996." *Id.* at 450.

Again plaintiff partially filled out the form and noted his history of having the kosher diet. Plaintiff also noted that he had requested the kosher diet promptly on his arrival at HCF in June but this had been denied. Defendant chaplain rejected the request and required plaintiff to be "active in the Jewish Group" for 90 days to be eligible for the kosher diet. *Id.* at 453.

-4-

Plaintiff filed an administrative grievance, which was assigned to the defendant. The defendant filed a report with the warden which did not mention plaintiff's statements that he had been on a kosher diet for nine months before coming to HCF. The warden denied the grievance, and plaintiff appealed to the state corrections department. The DOC investigated, found that plaintiff had been on a kosher diet at the two previous facilities, and recommended that his request be granted. On receiving that report, the deputy warden looked at plaintiff's file; apparently this was the first time that anyone at HCF found the change of religion form that plaintiff had completed at El Dorado and which had been in his file all along. Plaintiff's request was then granted. That decision was made on October 18, 1996, but not communicated immediately. Plaintiff began receiving a kosher diet on October 28, 1996, but four days before that he had mailed his *pro se* complaint to the district court, which was filed on October 30, 1996. I(A) Aplt. App. 92-93.

**B**

Plaintiff named as defendants Warden Robert Hannigan and Deputy Warden Steven Dechant, as well as appellant VanBebber, in his *pro se* complaint. The defendants' answer was filed in April 1997, along with a *Martinez* report.[2] Defendants promptly moved for summary judgment on several grounds. In a published order, the district judge determined that: plaintiff had shown the existence of a genuine issue of fact

---

[2]*See Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978).

as to the sincerity of his religious beliefs, and defendants were not entitled to summary judgment on that basis; plaintiff had failed to show any facts to support his equal protection claim, and defendants were entitled to partial summary judgment on that claim; the complaint would be construed as a suit against the defendants in their individual capacities, and thus Eleventh Amendment immunity would not shield the defendants; and defendants had not shown they were entitled to qualified immunity. *Searles v. VanBebber*, 993 F. Supp. 1350 (D. Kan. 1998).

Counsel was appointed to represent plaintiff in June 1998, after the court's ruling on the summary judgment motion. The case went to trial in February 1999. The jury found in favor of the warden and the deputy warden, but found defendant liable and assessed compensatory damages of $3,650, as well as $42,500 in punitive damages against him. The court later awarded attorney's fees, *Searles v. VanBebber*, 64 F. Supp. 2d 1033 (D. Kan. 1999), which is the subject of the second of the instant related appeals. Of particular importance to the appeal of the underlying damages awards, the district judge instructed the jury that they could consider damages for mental and emotional injuries and struck from the instruction language proposed by the defense that would have made such damages contingent on a finding of physical injury. We turn to that ruling which is appealed.

## II

## A

Defendant contends that the jury award of compensatory damages must be vacated because the jurors found no physical injury, only "mental and emotional injuries" in the words of the verdict form, and such recovery in the absence of physical injury is said to be barred by the Prison Litigation Reform Act of 1996 (PLRA), specifically 42 U.S.C. § 1997e(e).

Plaintiff argues that defendant has waived this PLRA issue because such a limitation on the available remedy constitutes an affirmative defense which must be pleaded in the answer; the defense was not pleaded in the answer, nor asserted in the pretrial order issues nor in defendant's motion for summary judgment. Defendant replies that the omission from the answer and the pretrial order occurred because plaintiff had not specifically requested such damages in the complaint or in the pretrial order.

Under the circumstances of this case we conclude that there was no waiver of the section 1997e(e) defense; we therefore need not decide whether this is an affirmative defense subject to waiver. Our review of the record reveals that defendant is correct in saying that plaintiff did not specifically plead, nor include in the pretrial order, a claim for mental and emotional damages. Thus, defendant can hardly have been expected to have raised defenses to this claim in the pleadings or the pretrial order. When defendant raised the issue at trial, by objecting to the instruction given by the court, the district judge did

not indicate that her decision was based on waiver; rather, she clearly appears to have overruled the objection on the merits. I(A) Aplt. App. 367-68. We find no waiver of this section 1997e(e) issue and turn to its merits.

## B

"We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir.), *cert. denied*, 121 S. Ct. 574 (2000). The issue presented here is clearly a legal issue and thus our review is plenary.

Defendant relies on section 803(d) of the PLRA, which provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). We note that the jury in this case did not find by a preponderance of the evidence that Defendant VanBebber caused physical injury to the Plaintiff. I(A) Aplt. App. 14.

Defendant contends that section 1997e(e) is a clear prohibition of the type of recovery awarded by the jury here. Plaintiff argues that the statute is ambiguous and should be construed to have no effect on First Amendment claims like his. We note that there are decisions which support, in varying degrees, plaintiff's argument against the

application of section 1997e(e) to bar compensatory damages on plaintiff's free exercise claim. *See, e.g., Shaheed-Muhammad v. Dipaolo*, __ F. Supp. 2d __, 2001 WL 311233 (D. Mass. 2001); *Mason v. Schriro*, 45 F. Supp. 2d 709, 715-21 (W.D. Mo. 1999); *Warburton v. Underwood*, 2 F. Supp. 2d 306, 315 (W.D.N.Y. 1998); *Self-Allah v. Annucci*, 1998 WL 912008 (W.D.N.Y. 1998).

For example in *Mason,* an equal protection claim was asserted based on allegations of a practice of considering race in temporary housing assignments in the state prison. In discussing the applicability of the limitations of section 1997e(e), the court adopted a narrow interpretation of the statute. Under that narrow construction, the statute was held inapplicable to claims of denial of equal protection rights. Plaintiff urges that the rationale of *Mason* would lead to a conclusion that the statute is likewise inapplicable to his First Amendment claim. It noted that a broader interpretation of section 1997e(e) would involve the denial of judicial remedies to the point "where Congress would in essence be taking away the rights themselves by rendering them utterly hollow promises." 45 F. Supp. 2d at 719. Therefore the court determined that the statute was not applicable there so as to preclude the plaintiff from proceeding on his claim for compensatory damages. *Mason* further held that even if section 1997e(e) were held to bar claims for compensatory damages for mental and emotional injury in plaintiff's circumstances, the statute was not applicable to bar plaintiff's claims for nominal damages. 45 F. Supp. 2d at 720. *Mason* said the reasoning of *Memphis Community School District v. Stachura,* 477 U.S. 299, 308

(1986), was instructive on the nominal damages question. *Mason* said that in *Stachura*, *id.* at 308-09, the Court held that nominal damages rather than damages based on some "undefinable value" of infringed rights are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.

Support for plaintiff's argument is provided by the analysis in other opinions, particularly *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998). *Canell,* like the instant case, involved an alleged infringement of an inmate's free exercise rights. The Ninth Circuit there rejected an argument that section 1997e(e) barred Canell's action because he was alleging only "mental or emotional injury," without the requisite physical injury. The Ninth Circuit disagreed, stating:

> *Canell is not asserting a claim for "mental or emotional injury." He is asserting a claim for a violation of his First Amendment rights.* The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.

143 F.3d at 1213 (emphasis added and footnote omitted). A similar result was reached in *Amaker v. Haponik*, 1999 WL 76798 (S.D.N.Y. 1999) ("the injury occasioned by a violation of a plaintiff's First Amendment right is not a 'mental or emotional' injury in the same sense as in common tort law.").

We disagree with the reasoning in *Mason* and *Amaker* which would make application of the statute contingent on the nature of the plaintiff's allegedly infringed rights. We are persuaded instead that section 1997e(e) should be held to apply in the

-10-

instant case because of its plain language.[3]  The plain language of the statute does not

permit alteration of its clear damages restrictions on the basis of the underlying rights

being asserted.  The underlying substantive violation, like Canell's First Amendment

wrong, should not be divorced from the resulting injury, such as "mental or emotional

injury," thus avoiding the clear mandate of § 1997e(e).  The statute limits the remedies

available, regardless of the rights asserted, if the only injuries are mental or emotional.

*See Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999).

Plaintiff contends that if the scope of the statute is not narrowed as it was in *Mason*

and *Amaker*, the statute would unconstitutionally infringe on plaintiff's right of access to

the courts.  We disagree with plaintiff and instead agree with other decisions holding that

the statutory restriction of section 1997e(e), barring damages for mental and emotional

injuries in the absence of physical injury, does not violate the inmate's due process rights

conferred by the Fifth Amendment.  *See Harris v. Garner*, 190 F.3d 1279, 1289 (11th Cir.

1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999),

*opinion reinstated in pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000), *petition for

cert. filed*, 69 U.S.L.W. 3259 (Sept. 25, 2000); *Davis v. District of Columbia*, 158 F.3d

1342, 1345-48 (D.C. Cir. 1998).  "[T]he Constitution does not demand an individually

---

[3]We note that in the context of an Eighth Amendment claim, in *Perkins v. Kansas Department of Corrections*, 165 F.3d 803 (10th Cir. 1999), we held that § 1997e(e) applied, but we have not decided the question of the statute's applicability in a First Amendment case like this.

effective remedy for every constitutional violation." *Zehner v. Trigg*, 133 F.3d 459, 462 (7th Cir. 1997). Damages are not available for constitutional violations when the defendants are governmental officials protected by qualified immunity. *Id.* Similarly, as the District of Columbia Circuit has noted, damages may be unavailable for constitutional violations where Congress has provided an alternative set of remedies. *Davis*, 158 F.3d at 1346 (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). *Davis* held that the claim there for compensatory damages was directly barred by § 1997e(e) because the plaintiff alleged no compensable injury. 158 F.3d at 1348.

In sum, the restriction on damages of 42 U.S.C. § 1997e(e) does not violate plaintiff's right of access to the courts or otherwise run afoul of constitutional restrictions. Thus the refusal to give the instruction requiring proof of physical injury, before any damages for mental or emotional injury could be awarded, was error.

**III**

Defendant contends that the district judge abused her discretion by refusing to permit defendant to call two witnesses in rebuttal. They purportedly would have testified to having seen plaintiff eating non-kosher food and to having heard announcements for the Jewish call out. Defendant contends that this was admissible impeachment evidence because the plaintiff had testified that he sincerely wished to obey the kosher dietary laws as he understood them and because plaintiff had testified that he was not aware of the

existence of a Jewish group at HCF.[4]  At trial, the plaintiff objected on the ground that the defendant had failed to disclose the witnesses and the substance of their testimony as required under Fed. R. Civ. P. 26(a)(1)(A), to which the defendant responded that disclosure was not required because the witnesses were rebuttal witnesses whose testimony would impeach the plaintiff's testimony.

The trial judge agreed with plaintiff that the testimony went to an issue which had been identified in the pretrial order.  Thus, she held that the identity of the witnesses should have been disclosed and that the testimony would not be allowed because of the failure to comply with the disclosure requirements.  The judge  further observed that to the extent the testimony was offered only for impeachment, it was inadmissible under Fed. R. Evid. 608(b), which in pertinent part provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, . . . may not be proved by extrinsic evidence."

On appeal, the defendant does not address the application of Rule 608(b), even though he continues to argue that the evidence was impeachment evidence.  Instead, defendant contends that the evidence was admissible under Fed. R. Evid. 404(b).  We see no merit in that argument.  Defendant does not explain his reliance on Rule 404(b), nor

---

[4]Plaintiff asserts that defendant failed to make an offer of proof as required by Fed. R. Evid. 103(a)(2).  Although it is true that a formal offer of proof was not made, the record of the parties' arguments to the court sufficiently conveys the substance of the anticipated evidence.  The rule does not require an offer to be made if the substance of the evidence was apparent from the context within which the questions were asked.

why he thinks this was evidence of some other "bad act" so as to be within the purview of that rule.

We think the district judge was correct in her ruling. If, as the judge saw it, the evidence was really more than mere impeachment evidence, then the witnesses should have been disclosed. Although a trial judge is not rigidly bound to exclude all evidence as a sanction for failure to fulfill the disclosure requirements, *see Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) ("the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case"), we see no abuse of discretion in the ruling in this case.[5] If, on the other hand, the evidence was purely impeachment evidence, it was inadmissible as extrinsic evidence of specific instances of the plaintiff's conduct under Fed. R. Evid. 608(b).

## IV

### A

We have determined that the compensatory damages award must be vacated

---

[5]Defendant contends that the judge should have applied a four part test to determine whether to exclude the evidence after having found a violation of the Rule 26 disclosure requirements. He cites, *inter alia*, *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153 (3d Cir. 1995), and *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980) (applying the same four factor test to question of whether trial court abused its discretion in admitting testimony not specified in the pretrial order). The issue here arose in the midst of trial, and we certainly do not fault the district judge for not making specific findings in support of her ruling. We are inclined to believe that the judge probably considered the four factors *sub silentio*; in any event, we find no abuse of discretion in her ruling.

because of the erroneous instruction on damages in violation of § 1997e(e).  However, we have found no error in the liability portion of the verdict.[6]  We now must determine whether any remedy could be afforded to plaintiff if we were to remand for a partial new trial.  In a previous case under section 1997e(e), we noted that "it is not clear that a claim for either punitive or nominal damages would also be barred.  Nominal damages, for instance, are available for the violation of certain 'absolute' constitutional rights, such as due process, without any showing of actual injury."  *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 808 n.6 (10th Cir. 1999) (citing *Carey v. Piphus*, 435 U.S. 247,

---

[6]The verdict form clearly reveals the separate determination of the jury on liability and the compensatory award of $3,650.  Attachment C to Brief of Appellant, pp. 2-3, states in pertinent part:

> 6.  Do you find by a preponderance of the evidence under Instruction No. 14 that defendant Durward VanBebber is liable to plaintiff?
>     Yes  X
>     No   __
>
> 7.  Do you find by a preponderance of the evidence under Instruction No. 19 that Mr. VanBebber caused physical injury to plaintiff?
>     Yes  __
>     No   X
>     . . . .
>
> 9.  Do you find by a preponderance of the evidence under Instruction No. 14 that Mr. VanBebber caused mental and emotional injuries to plaintiff?
>     Yes  X
>     No   __

266 (1978)).

After some vacillation on this issue, the government has taken the position that nominal damages can be recovered under the statute. Defendant does not address the issue. As the Supreme Court has noted:

> Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

*Carey v. Piphus*, 435 U.S. at 266. Because "nominal damages . . . are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury," *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308 n. 11 (1986) (citing *Carey*, 435 U.S. at 266), and because the statute does not reveal any attempt to alter that rule with respect to this class of cases, we now hold that section 1997e(e) does not bar recovery of nominal damages for violations of prisoners' rights. *See Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) (holding that prisoner's complaint for nominal damages for First Amendment violation was not barred by § 1997e(e)).

Moreover, the rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation, as the jury found here. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978)*; Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Risdal v. Halford*,

209 F.3d 1071 (8th Cir. 2000) (plain error to give the jury discretion not to award nominal damages on a finding of a violation of free speech rights); *Norwood v. Bain*, 143 F.3d 843, 856 (4th Cir. 1998), *aff'd in pertinent part en banc*, 166 F.3d 245 (4th Cir.), *cert. denied*, 527 U.S. 1005 (1999).

**B**

We must now consider issues concerning the award of punitive damages. Because the jury was specifically instructed to consider the amount of actual damages in determining the amount of punitive damages to be awarded, I(B) Aplt. App. 405, and we have determined that the award of actual damages must be vacated because of lack of proof of physical injury, we hold that the punitive damages award must also be set aside; otherwise the punitive award will rest on impermissible consideration of the improper actual damage award.

We must next decide whether punitive damages may be reconsidered on remand. Defendant contends that the evidence was insufficient to support any award of punitive damages, and alternatively that the determination of liability for punitive damages was against the weight of the evidence. We conclude, however, that the evidence was sufficient for the jury to determine that punitive damages should be awarded. The legal standard for punitive damages in cases under 42 U.S.C. § 1983 is well established. Punitive damages are available only for conduct which is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally

-17-

protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Whether the evidence was sufficient is a question of law which we review *de novo*. *Deters v. Equifax Credit Information Serv., Inc.*, 202 F.3d 1262, 1269 (10th Cir. 2000).

The evidence which plaintiff identifies as supporting the award of punitive damages came entirely from Chaplain VanBebber's own testimony. Plaintiff contends that four specific points constitute sufficient evidence from which the jury could conclude that the defendant acted with reckless indifference to his constitutional rights. Brief of Appellee at 36-37. First, despite the fact that defendant received information about and understood plaintiff's claim that he had been on the Jewish call out and had received kosher meals at both the El Dorado and Lansing facilities, defendant never contacted Lansing, and although he did make contact with his counterpart at El Dorado, he did not inquire whether plaintiff had been receiving kosher meals there. Second, defendant testified that if he had merely asked the question and learned that plaintiff had been on a kosher diet at El Dorado, "there would probably have not been any difficulty, he would have gotten the kosher diet . . . ." I(A) Aplt. App. 240.

Third, defendant did not check plaintiff's file before rejecting plaintiff's request, although the file was available to him, and thus he did not know that plaintiff had completed a change of religion request approximately one year before submitting the request for a kosher diet to which defendant was responding (the third such request plaintiff had submitted since returning to HCF). Fourth, defendant enforced against

plaintiff the policy requirement that a prisoner display the sincerity of his beliefs by attending Jewish call out for 90 days before defendant would deem plaintiff eligible for a kosher diet (and did so erroneously in view of plaintiff's history of involvement with the Jewish groups at the previous facilities); yet, defendant did not himself follow the procedures set out in the same policy statement, such as by making a written recommendation to the warden on receipt of plaintiff's request for accommodation of religious practices.

We also note that, although defendant testified that an inmate's history of participation in the activities of a religious group was considered by him to be an indication of the inmate's sincerity of belief, and defendant's own notes showed his awareness that plaintiff had been on the Jewish call out at El Dorado, defendant apparently gave that fact no weight in his decision to deny plaintiff's request. Defendant did not ask plaintiff for any further information, nor did he attempt to interview plaintiff before denying the request. As to defendant's failure to contact the chaplain at Lansing with respect to plaintiff's request, plaintiff had listed the Lansing chaplain as a reference in support of his request. Also, defendant was unaware of the two requests plaintiff had made to defendant's predecessor in June 1996, although the requests were in plaintiff's "pastoral care" file in the chaplain's office. We also are aware that the Kansas Department of Corrections, in responding to plaintiff's appeal of his administrative grievance, was able to locate the plaintiff's previous change of religion form from August 1995 at El Dorado, a

document which was readily available to defendant.

We conclude that a reasonable jury could find from this evidence that defendant's actions were in reckless disregard of plaintiff's rights. Nevertheless, the punitive award must be set aside because of error in the instruction on punitive damages which allowed consideration of the improper actual damages award. On remand, with proper instructions the jury may consider anew the claim for punitive damages as we explain *infra*.

**C**

Having held that the evidence was sufficient for the jury to consider punitive damages, we will also address whether section 1997e(e) would bar consideration of punitive damages on remand. We note that, as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury. *See Basista v. Weir*, 340 F.2d 74, 87-88 (3d Cir. 1965) (cited with apparent approval in *Carey*, 435 U.S. at 264, n.22); *Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000) ("[B]eyond a doubt, punitive damages can be awarded in a civil rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages."), *cert. denied*, 121 S. Ct. 757 (2001); *see also Louisiana ACORN Fair Housing, Inc., v. LeBlanc*, 211 F.3d 298, 300-304 (5th Cir. 2000) (collecting cases), *cert. denied sub nom. Louisiana ACORN Fair Housing, Inc. v. Lewis*, 69 U.S.L.W. 3269 (March 5, 2001).

Defendant does not argue that punitive damages are prohibited as a matter of law under section 1997e(e). The government has taken the position that punitive damages may

be proper in some cases, provided they are "based solely on an alleged constitutional violation, and not on any mental or emotional injury caused by the violation." Supplemental Authority Letter of the Justice Department dated May 18, 2000, at 2. At least one circuit has already held that punitive damages remain available, in the proper circumstances, in prisoner actions under section 1983. *Allah v. Al-Hafeez*, 226 F.3d 247, 251-53 (3d Cir. 2000). We agree. *But see Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998). We believe that the salient fact is that Congress simply did not choose to provide a restriction on punitive damages.

## V

In sum, we hold that 42 U.S.C. § 1997e(e) renders invalid the $3,650 award of compensatory damages in this case, due to lack of proof of physical injury, and that the punitive damages of $42,500 must also be stricken because the jury was instructed to consider the amount of the flawed compensatory damages award in determining the amount of punitive damages. The jury determinations that defendant violated plaintiff's First Amendment rights and, in doing so, acted with the requisite state of mind to support an award of punitive damages, as well as the jury's determination that plaintiff suffered no physical injury from defendant VanBebber, all remain intact. Because the jury has found a constitutional violation, on remand the plaintiff is entitled to an award of nominal damages of one dollar. Therefore, defendant is entitled to a new trial only on the issue of punitive damages. As for the award of attorney's fees, we conclude that it must be vacated

and remanded to the district court for reconsideration in light of our rulings and the further proceedings to be had herein.

Accordingly the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and the case is **REMANDED** for further proceedings in accord with this opinion.