FILED
United States Court of Appeals
Tenth Circuit

October 1, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RONALD MURRAY,

Plaintiff-Appellant,

v.

EDWARDS COUNTY SHERIFF'S
DEPARTMENT; KEN SCHMIDT;
BRYANT KURTH; JULIE LONG;
KENNETH DUPREE; MARK
FRAME,

Defendants-Appellees.

No. 06-3376
(D.C. No. 04-CV-1298-JTM)
453 F. Supp. 2d 1280 (D. Kan. 2006)

ORDER AND JUDGMENT[*]

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

Ronald Murray appeals pro se from the district court's grant of summary

judgment in favor of defendants on all of his claims under 42 U.S.C. § 1983. His

claims relate to his confinement in the Edwards County Jail ("Jail") as a pretrial

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

detainee for a period of approximately 11 months beginning in July 2003. He sought damages for numerous alleged violations of his constitutional rights, including the following: (1) the Jail was poorly ventilated, not adequately cooled or heated, unsanitary, and insect-infested; (2) lights outside of the cells remained illuminated 24 hours a day; (3) he was not provided with appropriate clothing and a means to wash his clothing; (4) he was denied all out-of-cell exercise or recreation; (5) he was not provided adequate medical, dental or psychological care; (6) he was denied visitation with friends; (7) his non-legal mail was screened or blocked; (8) he was not allowed physical access to the law library; (9) the phone system at the Jail was inadequate; and (10) he was prohibited from freely practicing his chosen religion.

Mr. Murray and defendants filed cross-motions for summary judgment. The district court granted summary judgment in favor of defendants and Mr. Murray filed a timely appeal. For the reasons set forth below, we AFFIRM.

## I. Standard of Review

"We review a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party." *Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> The moving party does not have to negate the nonmovant's claims in order to obtain summary judgment. The movant only bears the initial burden of showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.

*Barney*, 143 F.3d at 1307 (quotations, citations and alterations omitted).

## II. Physical Injury Requirement

The district court's first basis for granting summary judgment to defendants is that Mr. Murray failed to make any claim of injury other than assertions of mental and emotional distress. Therefore, the court concluded, his § 1983 claims were barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Mr. Murray does not dispute that he seeks to recover damages for emotional or mental injury as a result of the alleged constitutional violations. But he argues that § 1997e(e) is ambiguous and should not be interpreted to require a physical injury if the claim alleges a constitutional violation which rarely results in physical injury, such as his claims under the First, Sixth, and Fourteenth Amendments. As Mr. Murray

acknowledges, however, this court has already held that "[t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). In *Searles* we rejected the contention that § 1997e(e) should not be construed to require the showing of a physical injury in a claim for violation of the First Amendment right to free exercise of religion. We concluded that "[t]he statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id.*

Mr. Murray argues in the alternative that he did allege physical injuries. When asked at his deposition to specify every physical injury he had sustained while at the Jail, he testified as follows:

Defendants' Counsel:      Any sort of physical impairment, muscle atrophy, bone deterioration, anything like that?

Mr. Murray:      Not that I know of. You know, I'm not a medical expert or anything.

Defendants' Counsel:      Well, but did you notice any conditions–change of conditions in your physical condition during Edwards County?

Mr. Murray:      Well, I lost weight.

Defendants' Counsel:      Aside from losing weight?

Mr. Murray:      That's–several times I guess I had problems sleeping sometimes. Headaches every now and then. Those might just be typical ailments.

-4-

R., Vol. II, Doc. 191, Exhibit 2 at 67-8. The district court concluded that his *only* claim of physical injury was his alleged weight loss as a result of his inability to exercise outside of his cell. The court held, however, that the uncontroverted evidence showed that he weighed the same amount when he entered and left the Jail.[1]

Mr. Murray contends on appeal that he suffered other physical injuries including "headaches, muscle soreness and pains." Aplt. Br. at 18. Nowhere in the exchange quoted above, nor anywhere else in his deposition, did he mention muscle soreness resulting from the conditions of his confinement in the Jail. Yet he subsequently filed a contradictory affidavit supporting his summary judgment motion, in which he complained of periodic sore and aching muscles. He did not explain in his affidavit why he failed to testify about sore muscles at his deposition. Nor did he attempt to clarify his prior testimony or claim that his affidavit was based on newly-discovered evidence. Therefore, we hold that Mr. Murray's affidavit fails to create a material disputed fact regarding whether he suffered muscle soreness as a result of the conditions of his detainment in the Jail. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be

---

[1] Mr. Murray does not argue on appeal that the district court erred in reaching this conclusion regarding lack of evidence of his alleged weight loss.

greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony.").[2]

Mr. Murray did testify in his deposition that he experienced periodic headaches while in the Jail, and in his affidavit in support of his summary judgment motion he attributed his headaches to a lack of sleep due to the continuous illumination of the cells. He also testified regarding periodic pain resulting from defendants' failure to provide him dental care for two broken teeth.[3] For the purpose of this appeal, we will assume that Mr. Murray's

---

[2] The district court generally criticized much of Mr. Murray's evidence attempting to controvert defendants' facts, but did not make any specific evidentiary rulings excluding particular evidence. Nonetheless, it is clear that the district court disregarded his claim of muscle soreness. Moreover, we may affirm on any ground if the record is sufficient to permit conclusions of law, even grounds not relied upon by the district court. *See Bell v. Bd. of County Comm'rs of Jefferson County*, 451 F.3d 1097, 1102 n.5 (10th Cir. 2006).

[3] Mr. Murray testified as follows regarding his tooth pain:

Defendants' counsel:     And what were the symptoms you were having with the cracked teeth?

Mr. Murray:     Well, when I would eat food I would get pain periodically from chewing down, and I mean, it wasn't constant. It was just periodic. But the other one, the tooth cracked all the way to the gum, and, in fact, I ended up pulling a piece of it off because . . . it was bothering me, and they weren't bringing me to the dentist, so I went ahead and pulled what piece I could.

R., Vol. II., Doc. 191, Exhibit 2 at 50.

headaches and tooth pain are "physical injuries" sufficient to permit him to recover damages for mental or emotional injury under § 1997e(e) on his claims related to cell illumination and denial of dental care.

Mr. Murray does not argue that the district court erred by failing to consider any other physical injuries resulting from any of his other claims. Therefore, we affirm the district court's grant of summary judgment on all claims not related to cell illumination or dental care, based on his failure to show any physical injury as required by § 1997e(e).[4]

### III.  Remaining Claims[5]

The conditions of confinement may not amount to punishment of a pretrial detainee.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  But "jail conditions may be restrictive and even harsh without violating constitutional rights."  *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (quotation omitted). Although, as a pretrial detainee, Mr. Murray was protected by the Due Process

---

[4]      In *Searles* we held that, even in the absence of a showing of physical injury, § 1997e(e) does not bar recovery of nominal or punitive damages for a constitutional violation.  251 F.2d at 879, 881.  But Mr. Murray does not contend on appeal that the district court erred in granting summary judgment where he sought that relief.  He therefore has waived that argument on appeal.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding that issue not raised in opening appellate brief was waived).

[5]      In its analysis of the merits of Mr. Murray's various claims, the district court did not directly address his claims regarding cell illumination and denial of dental care.  But again, we may affirm on any ground if the record is sufficient to permit conclusions of law, even grounds not relied upon by the district court.

Clause of the Fourteenth Amendment, in determining whether his rights were violated we apply the same analysis as applied in § 1983 claims alleging Eighth Amendment violations. *See id.* "The test for a 'deliberate indifference' claim under the Eighth Amendment has both an objective and a subjective component." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (quotation omitted). In order to satisfy the objective component, Mr. Murray was required to show that he suffered harm "sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Id.* (quotation omitted). To satisfy the subjective component, he needed to establish that defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Id.* (quotation omitted).

Under the objective "sufficiently serious" component, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation omitted). Mr. Murray must show that he was detained "under conditions posing a substantial risk of serious harm" to his health or safety. *Id.* The purpose of the "sufficiently serious" requirement "is to limit claims to significant, as opposed to trivial, suffering. Consequently, we look to the alleged injury claimed by the prisoner, and ask whether that harm is sufficiently serious." *Kikumura*, 461 F.3d at 1292 (quotations and citation omitted). Under this objective prong, the court examines the harm identified by the prisoner to determine if it was sufficiently

serious, without regard to causation or the subjective prong. *Mata v. Saiz*,

427 F.3d 745, 753 (10th Cir. 2005).

> The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 751 (quotation, citation, and alteration omitted).

### A. Cell Illumination

Mr. Murray challenges the Jail's practice of leaving certain lights on

24 hours a day as an unconstitutional deprivation of his basic right to sleep. In

order to prevail on this claim, he must present evidence that he suffered a harm

"'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."

*Kikumura*, 461 F.3d at 1291 (quotation omitted). He must also produce evidence

that defendants caused the harm "with the requisite culpable state of mind."

*Mata*, 427 F.3d at 753. He must show that they "kn[ew] of and disregard[ed] an

excessive risk to [his] health or safety." *Id.* at 751.

He claims that lights outside of the cells, consisting of four 75-watt bulbs,

remained on continuously. Although the lights were two to three feet away from

the cells, they illuminated inside the cells, and the lights were bright enough to

sometimes disturb his sleep, resulting in headaches which he experienced "every

now and then." R., Vol. II, Doc. 191, Ex. 2 at 68. According to Mr. Murray, the

lighting also "caused other psychological effects, such as depression." *Id.*, Ex. 1 at 7. He claims that he and other inmates asked that the lights be turned off, but that their requests were refused. Instead, he and other inmates attempted to block the lights with towels.

We have held that continuous lighting within a cell during a short-term period of solitary confinement, along with other restrictions, did not amount to a constitutional violation. *See Gregory v. Wyse*, 512 F.2d 378, 382 (10th Cir. 1975). Mr. Murray contends that other courts have held that subjecting an inmate to continuous lighting in a cell for a longer period of time may amount to an Eighth Amendment violation. *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (holding inmate produced sufficient evidence on lighting claim to avoid summary judgment), *amended by* 135 F.3d 1318 (9th Cir. 1998). But the plaintiff in *Keenan* alleged that as a result of the continuous lighting he "had no way of telling night or day" and suffered "grave sleeping problems." *Id.* at 1091 (quotations omitted).

In contrast, Mr. Murray failed to produce evidence of a sufficiently serious injury caused by the continuous lighting in his cell. Although he asserts that his inability to sleep amounted to a "deprivation of constitutional dimension," *Kikumura*, 461 F.3d at 1292, his own testimony indicated that the lights only sometimes disturbed his sleep and that he suffered headaches as a result of his loss of sleep only every now and then. In referring to his sleep and headache

problems, he even indicated that "[t]hose might just be typical ailments." R.,

Doc. 191, Exhibit 2 at 68.[6] Therefore, he failed to establish that either his

sleeping problems or his headaches constituted sufficiently serious harm to

sustain a claim under the Cruel and Unusual Punishment Clause.

Mr. Murray did produce evidence that he suffered from significant

depression while he was in the Jail. He stated the following in his affidavit:

> The conditions of the Jail made me feel as though I were being
> punished, humiliated and degraded by the Jail employees. I was
> depressed most of the time in the Jail. Such lasted my entire
> detainment. I felt depressed most of the day, every day. I felt
> worthless. In fact I entertained thoughts of suicide or death
> periodically in the Jail. I felt fatigued or had a loss of energy all of
> the time. The Jail was dull and gloomy and I had no pleasure in
> [a]ny activity in the Jail. I pretty much had a loss of interest in
> everything, especially life in general.

R., Vol. II, Doc. 191, Ex. 1 at 3. But while he may have presented evidence of a

sufficiently serious harm with respect to his depression, he failed to show that it

was *caused* by the continuous illumination of his cell. *See Mata*, 427 F.3d at 753

(noting causation requirement). He produced no evidence that the lighting, which

only sometimes disturbed his sleep or gave him headaches, caused him to suffer

---

[6]    We note that Mr. Murray stated in an affidavit that he "had alot of sleepless nights and trouble sleeping, due to the lights remaining on for 24 hours per day, every day for my entire 11 month detainment." R., Vol. II, Doc. 191, Ex. 1 at 3. He also stated that "[t]his continuous illumination made it very difficult to sleep at night. It disturbed my sleep and caused restlessness, tossing and turning most of the night." *Id.* at 7. But these statements contradict his previous testimony that the lights only sometimes disturbed his sleep. Therefore, his affidavit again fails to create a material disputed fact. *See Franks*, 796 F.2d at 1237.

-11-

the severe depression that he alleged. In fact, he cited numerous other conditions and restrictions as causing or exacerbating his depression, such as the denial of psychological treatment, *see* R., Vol. II, Doc. 191, Ex. 1 at 3.; the denial of all outside or out-of-cell exercise or recreation, denial of visitation privileges, and improper screening and blocking of his mail, *see id.*, Ex. 11; and the unsanitary cell conditions, *see id.*, Ex. 1 at 6. Numerous inhumane conditions of confinement may be actionable if in combination they "produce[] the deprivation of a single, identifiable human need." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996). But in this case we have already concluded that Mr. Murray cannot recover for his mental or emotional injuries related to any of these other claims because he failed to produce evidence of a physical injury. Thus, his failure to show that he suffered severe depression specifically as a result of the illumination of his cell precludes his recovery on this claim.

We conclude that Mr. Murray has failed to produce evidence creating a genuine issue of material fact, and therefore the district court did not err in granting summary judgment on his claim related to cell illumination.

## B. Denial of Dental Treatment

Mr. Murray also contends that his requests for dental care were denied by defendants, causing him to suffer sufficiently serious harm. Again, he must produce evidence that he suffered from an objectively serious harm caused by defendants' deliberate indifference to his serious need for dental care. *See Mata*,

-12-

427 F.3d at 752-54. Although Mr. Murray presents a superficially persuasive theory, a review of the evidence he presented does not support his claim.

He testified that within the first few months of his detainment in the Jail, which began in July 2003, he cracked two teeth while eating. He stated that his tooth pain was not constant, but that he periodically experienced severe, shooting pain when he ate. He says that he ended up pulling out some of one of the broken teeth himself, in order to alleviate the pain. He testified that he asked several times, including in writing, to see a dentist, but that his requests were refused. Defendants deny that Mr. Murray ever asked for dental care for any reason while he was in the Jail, but we must view the evidence in the light most favorable to him. But even when reviewed in that light, we find no evidence regarding the nature of his requests for dental treatment while in the Jail or to whom they were made.

Subsequent to his detainment in the Jail, Mr. Murray was incarcerated in the Kansas Department of Corrections ("K-DOC") prison system beginning in May 2004. He testified that he informed K-DOC of his broken teeth during the intake process and there is evidence indicating he had a dental exam on May 12, 2004. Defendants point out, however, that he did not receive treatment from K-DOC until several months later, when one tooth was extracted.[7] The evidence

_____

[7] Mr. Murray explained that the intake process for K-DOC was intended only to evaluate any medical needs and that treatment came several months later when

(continued...)

-13-

reflects that Mr. Murray submitted a written medical request to K-DOC on September 30, 2004, in which he indicated that his tooth was either broken or a filling had come out and he was experiencing a sharp pain when he chewed. That tooth was extracted the next day. Mr. Murray produced no evidence of any treatment received for his second broken tooth after leaving the Jail.

Mr. Murray claims that he suffered a sufficiently serious harm resulting from defendants' denial of dental care. "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (quotation omitted). He argues that defendants' denial of dental care caused him to be in extreme pain for the duration of his confinement in the Jail and also resulted in the loss of two teeth. But he testified that his tooth pain "wasn't constant. It was just periodic." R., Vol. II, Doc. 191, Ex. 2 at 50; *see also id.*, Ex. 1 at 10 (stating pain was periodic rather than constant). And after leaving the Jail he did not seek dental care for several more months, nor does the record reflect any interim complaints to K-DOC of tooth pain. Although "pain experienced while waiting for treatment" may constitute substantial harm, "not every twinge of pain suffered as a result of delay in medical care is actionable." *Kikumura*, 461 F.3d at 1292 (quotation omitted).

----

[7](...continued)
he was sent to a regular prison facility. But he did not present any evidence of complaints of tooth pain from the time that he left the Jail in May 2004, until the end of September.

But Mr. Murray did testify that, after being denied treatment, he suffered pain at some point that was severe enough to cause him to remove part of one of his teeth himself, which could be sufficient to show "considerable pain." *Mata*, 427 F.3d at 751 (quotation omitted); *see also Kikumura*, 461 F.3d at 1293 (holding that plaintiff's "torturous" pain related to life-threatening illness, as well as significant physical injuries, satisfied substantial harm requirement). And evidence of the loss of a tooth could also satisfy the substantial harm requirement, as a "permanent loss." *Mata*, 427 F.3d at 751 (quotation omitted).

Again, Mr. Murray also must show that defendants caused the substantial harm he claims to have suffered. In *Mata* we noted,

> [o]f course, a prisoner must be careful in selecting what harm to claim. The prisoner may be better off claiming some intermediate harm rather than the last untoward event to befall her. After all, the prisoner may not be able to prove that this last event was caused by any government actor or that the actor who caused the event acted with the requisite culpable state of mind.

*Id.* at 753. Here, Mr. Murray failed to support his claim that defendants' refusal to provide him dental treatment caused the loss of the tooth extracted in K-DOC. First, he presented evidence of only one "lost" tooth. And the dental treatment he ultimately received was the extraction of that tooth in K-DOC. He produced no evidence that earlier dental treatment, while he was in the Jail, would have prevented that consequence and allowed him to avoid removal of his tooth. *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (noting lack of

-15-

medical evidence that damage to heart resulted from delay in receiving care). There is simply no evidence supporting Mr. Murray's assertion that defendants' denial of dental care resulted in him losing any teeth.

But he did produce evidence of causation with respect to the pain he experienced which led him to pull out part of his tooth while at the Jail. He indicated that he did so in order to alleviate the pain, after he was denied dental treatment. *See id.* at 1210 n.5 (holding there was sufficient evidence for jury to conclude that delay in medical care unnecessarily prolonged prisoner's pain and suffering).

Nonetheless, Mr. Murray failed to produce evidence of any defendant's culpable state of mind in support of his claim regarding the denial of dental care. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mata*, 427 F.3d at 751 (quotation and alteration omitted). We addressed in *Mata* the proof necessary to satisfy this requirement. The plaintiff, Ms. Mata, offered evidence through deposition testimony and her affidavit that she reported severe chest pain to a prison nurse. *Id.* at 750, 758-59. We held that evidence was sufficient to avoid summary judgment, noting:

> What is significant is that the evidence presented to the district court supports the conclusion that [the nurse] was in fact aware Ms. Mata was suffering from severe chest pains and required medical attention. Ms. Mata personally reported as much to [the nurse].

*Id.* at 756.

Mr. Murray, in contrast, testified that he made a written request to see a dentist, which was denied. In his affidavit, he similarly said that he asked to see a dentist several times, but his requests were denied. He also said that he "lodged numerous complaints regarding medical, dental and psychological care, but all were denied." R., Vol. III, Doc. 216 at 3. But Mr. Murray produced no evidence, through his affidavit or otherwise, showing that he made known to any of the defendants the nature of his need for dental treatment or the extent of his pain. Thus, he failed to establish an inference that any of the individual defendants knew of and disregarded an excessive risk to his health. *See Mata*, 427 F.3d at 756. Nor has he shown that Edwards County acted with deliberate indifference by producing evidence of a risk "so obvious that the official should have known of it." *Barney*, 143 F.3d at 1307 n. 5. Therefore, Mr. Murray failed to support his claim with evidence from which a jury could infer the defendants' deliberate indifference. *See Mata*, 427 F.3d at 751.

We again conclude that Mr. Murray has failed to produce evidence creating a genuine issue of material fact, and therefore the district court did not err in granting summary judgment on his claim related to denial of dental treatment.

### IV.  Denial of Motions to Strike Affidavits, For Protective Order and Sanctions

We have considered Mr. Murray's arguments of error regarding the district court's denial of his various motions to strike certain affidavits, his motion for protective order, and his motions for sanctions and find them to be without merit.

### V.  Conclusion

Because Mr. Murray has failed to produce evidence establishing a dispute of material fact on his claims related to cell illumination and denial of dental treatment, we affirm the district court's grant of summary judgment on those claims.  We affirm the district court's grant of summary judgment on all of Mr. Murray's other claims based on his failure to show any physical injury as required by § 1997e(e).  The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge