# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3446

_____

Jeffery R. Royal,                                     *
                                                      *
        Plaintiff/Appellant,                *
                                                      *
  v.                                              *
                                                      *
Walter Kautzky,                                       *
                                                      *
        Defendant,                          *
                                                      *
Lowell Brandt; Carole Clemens,                        *
                                                      *
        Defendants/Appellees,               *   Appeal from the United States
                                                      *   District Court for the
Paul W. Loeffelholz; Rusty Rogerson;                  *   Southern District of Iowa.
Chris Gesie, Head Nurse; Gabriele                     *
Ortiz, Doctor, IMCC; Larry Hardy,                     *
Head of Transportation,                               *
                                                      *
        Defendants,                         *
                                                      *
Tom Reid, Head of Security, IMCC,                     *
                                                      *
        Defendant/Appellee,                 *
                                                      *
King, Captain; Unknown/Unnamed                        *
Defendants, John Does, guards, IMCC,                  *
                                                      *
        Defendants.                         *

_____

Submitted: December 18, 2003
Filed: July 15, 2004

_____

Before LOKEN, Chief Judge, HEANEY and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Jeffery Royal (Royal) brought a section 1983 prisoner suit against several Iowa Medical Classification Center (IMCC) employees, including Tom Reid (Reid), IMCC's head of security. After a trial, Royal obtained a judgment against Reid for $1.00, and was awarded attorney fees in the amount of $1.50. The district court expressly found "Royal did not sustain a physical injury." Consequently, the district court[1] denied mental or emotional damages, awarding only nominal damages, and further denied an award of punitive damages. We affirm.

I.    BACKGROUND

While an inmate at IMCC, an institution within the Iowa Department of Corrections, Royal made numerous complaints and grievances. Most of Royal's complaints followed unsuccessful requests for medical care to address a spinal cord injury. After Reid tired of Royal's behavior, Reid placed Royal in segregation for sixty days. Royal filed a section 1983 suit against the IMCC officials, including Reid, for retaliation against Royal's First Amendment rights and access to the courts. The defendants filed a motion for summary judgment, which the district court denied. In denying the motion for summary judgment, the district court determined the record contained no allegations and no evidence showing Royal sustained physical injury.

_____

[1]By consent of the parties, the dispute was referred for final disposition to the Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa. 28 U.S.C. § 636(c).

Thus, the district court determined the Prison Litigation and Reform Act of 1995 (PLRA) limited Royal's damages to nominal damages.  See 42 U.S.C. § 1997e(e).

Following an evidentiary hearing, the district court found Reid had unconstitutionally retaliated against Royal by placing him in segregation because Royal filed numerous grievances.  Since Royal did not suffer physical injury, the district court assessed nominal damages of $1.00.  The district court considered punitive damages, but decided against them after finding Reid did not act with evil motive or reckless indifference, but out of frustration and a desire to protect his staff from Royal's abuse.  Because Reid had retired, the district court also found punitive damages would not deter future conduct.  Applying the PLRA's limitation on attorney fees, the district court awarded attorney fees in the amount of $1.50 to Royal.

On appeal, Royal asserts three grounds for reversing the district court.  First, Royal contends he is entitled to more than nominal damages, even though he suffered no physical injury.  Second, Royal contends the district court abused its discretion by failing to award punitive damages.  Third, Royal attacks the constitutionality of the PLRA's limitation on attorney fees.

## II.    DISCUSSION
### A.    Standard of Review
We "review claims of constitutional error and issues of statutory construction de novo." Foulk v. Charrier, 262 F.3d 687, 703 (8th Cir. 2001).  However, the district court's damages award, including the district court's decision to deny punitive damages, is reviewed for an abuse of discretion. Trobaugh v. Hall, 176 F.3d 1087, 1088-89 (8th Cir. 1999).  We review the district court's factual findings for clear error.  See Williams v. Brimeyer, 116 F.3d 351, 354 (8th Cir. 1997).

## B.    Compensatory Damages

The PLRA states "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  With commendable candor, Royal acknowledges he did not suffer physical injury, and does not challenge the district court's conclusion Royal suffered no physical injury as a result of Reid's actions.  However, Royal contends the PLRA does not limit his damages simply because he did not suffer physical injury.  Royal argues (1) the PLRA's limitation on damages does not apply to First Amendment violations, and (2) his claim for being improperly segregated does not involve mental or emotional injury, so the PLRA should not limit his damages.

We are not the first court to confront whether section 1997e(e) applies to First Amendment violations.  Other courts have not agreed on a uniform interpretation of section 1997e(e).  The majority of courts hold section 1997e(e)'s limitation on damages applies to all federal prisoner lawsuits.  See, e.g., Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (concluding "[s]ection 1997e(e) applies to all federal civil actions including claims alleging constitutional violations"); Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001) (holding section 1997e(e) applies to First Amendment violations); Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000) (holding section 1997e(e) applies to First Amendment violations); Todd v. Graves, 217 F. Supp. 2d 958, 961 (S.D. Iowa 2002) (holding section 1997e(e) applies to Fourteenth Amendment suits).  Some courts have charted a different course, excluding First and Fourteenth Amendment claims from section 1997e(e)'s reach.  See, e.g., Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding section 1997e(e) does not apply to First Amendment claims); Mason v. Schriro, 45 F. Supp. 2d 709, 719 (W.D. Mo. 1999) (holding section 1997e(e) does not apply to Fourteenth Amendment equal protection claims).

We join the majority, concluding Congress did not intend section 1997e(e) to limit recovery only to a select group of federal actions brought by prisoners. Instead, we read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners. In reaching this conclusion, we cannot escape the unmistakably clear language Congress used: "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury . . . without a prior showing of physical injury." To read this statute to exempt First Amendment claims would require us to interpret "[n]o Federal civil action" to mean "[n]o Federal civil action [except for First Amendment violations]." If Congress desires such a reading of section 1997e(e), Congress can certainly say so. We cannot.

Royal's second argument is his claim does not involve mental or emotional injury, so the PLRA should not limit his recovery rights. Royal apparently contends other types of recovery are available to him. To the extent Royal argues nominal damages, punitive damages, and injunctive and declaratory relief are available to him, we agree. Congress did not intend section 1997e(e) to bar recovery for all forms of relief. See, e.g., Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986) (holding nominal damages should be granted for section 1983 claims when actual injury cannot be shown); Smith v. Wade, 461 U.S. 30, 56 (1983) (holding punitive damages are authorized for violations of constitutional rights); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (holding section 1997e(e) does not preclude nominal damages); Thompson, 284 F.3d at 418 (holding section 1997e(e) does not preclude injunctive relief or nominal damages); Searles, 251 F.3d at 878-79 (holding section 1997e(e) does not preclude nominal damages); Davis v. Dist. of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998) (stating section 1997e(e) does not preclude injunctive relief); Zehner v. Trigg, 133 F.3d 459, 462 (7th Cir. 1997) (same). Therefore, Royal was free to seek nominal damages, punitive damages, injunctive relief and a declaratory judgment. Congress is well within its authority to balance the interests and reasonably limit a prisoner's relief.

The district court awarded $1.00 in nominal damages to Royal, and considered awarding punitive damages. Faithfully following the PLRA, the district court appropriately awarded Royal $1.00 in nominal damages for Royal's First Amendment violation. Royal may not recover some indescribable and indefinite damage allegedly arising from a violation of his constitutional rights. See, e.g., Stachura, 477 U.S. at 308 n.11 (stating "nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury"); Carey v. Piphus, 435 U.S. 247, 267 (1978) (holding nominal damage award of $1.00 required for procedural due process violation); Risdal v. Halford, 209 F.3d 1071, 1073 (8th Cir. 2000) (holding court must award nominal damages in the amount of $1.00 for First Amendment violations).[2]

_____

[2]Besides the rejected compensatory damages claim for mental or emotional injury, we are uncertain as to what damages Royal seeks. Citing Trobaugh, Royal seemingly seeks damages for each day he wrongfully spent in segregation, a loss of liberty injury. In Trobaugh, a prisoner filed a section 1983 suit for being placed in segregation for exercising his First Amendment rights. Trobaugh, 176 F.3d at 1088. The district court found the prisoner's First Amendment rights had been violated, and awarded him $1.00 as nominal damages. Id. On appeal, our court concluded the district court's "compensatory damage award was patently insufficient to compensate [the prisoner] for the injury he suffered by being placed in segregation in retaliation for exercising his constitutional right." Id. at 1089. Remanding the case for a new damages award, the court stated an "appropriate amount . . . would be in the vicinity of $100 per day for each [day] spent in administrative segregation." Id. Trobaugh does not control Royal's case, because the Trobaugh court did not confront the PLRA's limitation on recovery in prisoner suits. The Trobaugh court also did not discuss what injury the $100 per day compensated. Nor did the court explain how it arrived at $100 per day as an "appropriate" damage assessment. Finally, the Trobaugh court did not discuss whether the prisoner had been released from prison, which would have taken his case outside of section 1997e(e), had it even applied. Because the Trobaugh court was not limited by the PLRA, as we are in this case, we decline to extend the holding from Trobaugh to cover a damage award subject to the PLRA's limitations.

## C. Punitive Damages

A factfinder may assess punitive damages in a section 1983 action when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Wade, 461 U.S. at 56. If a district court finds a defendant's conduct meets the threshold for awarding punitive damages, the court should then consider the two purposes of punitive damages: (1) punish willful or malicious conduct; and (2) deter future unlawful conduct. Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997). An appellate court should not lightly reverse a district court's decision to award–or not to award–punitive damages in a section 1983 case. Because a district court's decision to award punitive damages involves "a discretionary moral judgment," we empower a district court with enough discretion to make its proper judgment call without fear of inappropriate appellate intervention. Id.; Taylor v. Howe, 280 F.3d 1210, 1212 (8th Cir. 2002) (holding district court's decision not to award punitive damages was not an abuse of discretion because "the Court's action [was not] so far out of bounds as to justify appellate intervention"). We reverse only when we are convinced the decision to award–or not to award–punitive damages constitutes an abuse of discretion. Coleman, 114 F.3d at 787-88.

Given the highly deferential standard of review, we find no reversible error for three reasons. First, the district court accurately stated and applied the appropriate legal standard on punitive damages. Second, the district court's factual findings were not clearly erroneous. As the factfinder, the district court found no "evil motive" or "reckless or callous indifference" in Reid's actions. Instead, the district court found Reid acted, in part, out of frustration and a concern to protect his staff from Royal's abuse. Third, the district court concluded the purposes behind punitive damages would not be advanced in this case. The district court noted Reid's retirement weighed against awarding punitive damages, because a punitive damages award would not deter Reid's future conduct. The district court also concluded punitive damages were unnecessary to deter others. This conclusion is buttressed by the

district court finding Reid's conduct violated the First Amendment, of which every IMCC employee should be made aware.

Royal contends Trobaugh also controls the punitive damages issue. However, the court in Trobaugh did not hold the district court abused its discretion by not awarding punitive damages. Instead, the court held the district court abused its discretion by awarding only $1.00 for nominal damages. Trobaugh, 176 F.3d at 1088-89. Since the court reversed the district court on the nominal damages award and remanded for reconsideration, the court asked the district court to reconsider its decision not to award punitive damages. Id. at 1089. Indeed, the district court refused to award punitive damages upon remand. We conclude Trobaugh does not require us to reverse the district court's decision not to award punitive damages.

Because the district court applied the correct legal standard, and exercised its discretion in denying punitive damages, we refuse to second-guess the district court's decision. We conclude the district court did not abuse its discretion in not awarding punitive damages to Royal.

### D.    Attorney Fees
The PLRA places the following limitation on awards of attorney fees:

> Whenever a monetary judgment is awarded in an action [brought by a prisoner in which attorney fees are authorized], a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney[] fees awarded against the defendant. If the award of attorney[] fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(2). Although awkwardly worded, the PLRA allows an award of attorney fees for 150 percent of the damages award.

Royal contends the PLRA's attorney fees limitation violates his constitutional rights. Based on settled Eighth Circuit precedent, the district court rejected Royal's constitutional attack and awarded attorney fees in the amount of $1.50 (i.e., 150 percent of the $1.00 monetary judgment).

On appeal, Royal recognizes Eighth Circuit precedent controls the issue of the constitutionality of the PLRA's attorney fee limitation. We agree. In Foulk, 262 F.3d at 704, our circuit joined other circuits in holding "the PLRA's attorney[] fees cap passes constitutional muster." See Robinson v. Hager, 292 F.3d 560, 563 n.2 (8th Cir. 2002) (following Foulk "because this circuit has already upheld the constitutionality of the PLRA, and because a panel cannot overturn another panel's decision"). In deciding the PLRA's attorney fee limitation was constitutional, our court recognized "we are not authorized to act as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. Moreover, our role is not to judge the wisdom, fairness, or logic of legislative choices." Foulk, 262 F.3d at 704 (quoting Walker v. Bain, 257 F.3d 660, 670 (6th Cir. 2001)).

Notwithstanding our circuit's binding decision upholding the PLRA's limitation on attorney fees, Royal wishes to await this panel's decision and seek en banc review to overrule Foulk. Agreeing with the district court's decision to limit attorney fees to 150 percent of the damages award, we affirm the district court's award of $1.50 in attorney fees.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in Royal's favor, including its decision to award $1.00 in nominal damages and not to award punitive damages. We also affirm the district court's order limiting the attorney fees award to $1.50, or 150 percent of the damages award.

HEANEY, Circuit Judge, dissenting.

Based on court precedent, the language of the physical injury requirement, and the legislative history of the Prison Litigation Reform Act ( PLRA), I disagree with the majority's holding that 42 U.S.C. § 1997e(e) bars compensatory damages for violations of the First Amendment, and therefore, respectfully dissent.

## I. BACKGROUND

Jeff Royal was convicted of "cattle rustling" and sentenced on August 10, 1998, to a term of five years in the Iowa Department of Corrections system. Prior to his conviction, Royal fell through a haymow and suffered a spinal cord injury requiring him to use a wheelchair. Royal was initially sent to the Iowa Medical and Classification Center (IMCC) and assigned to the general population. Royal became dissatisfied with the medical treatment he received and filed a pro se complaint on September 10, 1998. His complaint included allegations that: 1) he could not turn his wheelchair in his cell; 2) he was unable to get to the toilet or shower; 3) he had blood in his catheter but no action was taken by medical staff because he did not have an elevated temperature; 4) he was transferred in a van that was not handicapped accessible, requiring him to fall to the floor before pulling himself onto the van's seat; 5) he had to fall on the ground and pull himself up onto a shower chair in order to shower; 6) he had to lay on the floor after using the toilet to pull on his prison-issue jumpsuit, and his request to wear pants instead of a jumpsuit was denied; and 7) his requests for an enema were delayed - once for ten days and once for six days. Royal's request for the assistance of counsel was granted on September 29, 1998.

In October of 1998, the IMCC medical director decided that Royal did not need his analgesics and confiscated his wheelchair. Royal complained that the crutches he was expected to use caused him pain and tingling in his hands and that the health service unit was far away, making it difficult for him to show up for his periodic

-10-

exercises. Between November 1998 and January 1999, Royal submitted seventeen grievances in attempt to regain his wheelchair. On December 24, 1998, Royal filed a preliminary injunction motion to get his wheelchair back. Accompanying the motion was an affidavit in which Royal stated that his leg brace had broken and, without his wheelchair, he had to crawl on the floor. Royal also asserted in the affidavit that when Tom Reid, the IMCC Security Director, was notified that Royal had to crawl on the floor, Reid issued a memorandum stating that any inmate seen crawling on the floor would be subject to discipline.

On January 12, 1999, prior to the preliminary injunction hearing, Royal had a consultation with a neurosurgeon at the University of Iowa Hospitals and Clinic. The doctor stated that the use of crutches was putting pressure on Royal's ulnar nerve and recommended that Royal's wheelchair be returned to him. The prison authorities returned his wheelchair and the preliminary injunction hearing was cancelled.

On January 28, 1999, Royal was "written up" after a confrontation with a nurse in the health services unit. Shortly thereafter, Royal was removed from the general population and placed in summary administrative segregation or, "lock up." Prior to being placed in segregation, Royal had been rated as above average in adjusting to prison work and outstanding in adjusting to his living unit. He remained in segregation until March 25, 1999, when he was transferred to another facility. Royal was paroled in December 1999.

Royal brought this suit pursuant to 42 U.S.C. § 1983, alleging that he was retaliated against for exercising his right of access to the courts when he was placed in segregation for almost two months.[3] The magistrate judge agreed, holding that Royal was placed in segregation in retaliation for filing complaints in violation of his

---

[3] This complaint was filed on July 27, 2000. Royal's amended complaint is a retaliation claim and dismisses his original complaints about his medical care.

First Amendment rights. The magistrate judge, however, denied Royal's claims for both compensatory and punitive damages, awarding Royal $1.00 in nominal damages and his attorney $1.50 as 150% of the damages award. Royal now appeals the denial of compensatory and punitive damages and the limitation on attorney's fees.

## II. PRISON LITIGATION REFORM ACT

The PLRA was enacted on April 26, 1996, as part of an extensive omnibus appropriations bill. Section 1997e(e) of the PLRA is entitled "Limitation on recovery" and states that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury . . . without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury requirement of this provision has been litigated in almost every circuit, with extremely varying results. One of the key disputes is whether the physical injury requirement applies to constitutional claims in which physical injuries rarely occur, such as violations of the First and Fourteenth Amendments. The majority states in its opinion that the majority of circuits have held that § 1997e(e)'s limitation on damages applies to First Amendment claims. A review of the case law, however, reveals that courts in a majority of the circuits have either affirmatively held that § 1997e(e) does not apply to First Amendment claims, or have declined to apply the physical injury requirement to such claims.

In the first circuit court opinion to hold that § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought, the Ninth Circuit in Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998), held that "[t]he deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show." The Seventh Circuit agreed, holding that a "deprivation of First Amendment rights standing alone is a cognizable injury," therefore "[a] prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained." Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999). The Fifth and Sixth Circuits have both declined to

-12-

apply § 1997e(e) to First Amendment claims. See Oliver v. Scott, 276 F.3d 736, 747 n.20 (5th Cir. 2002) (applying the physical injury requirement to claims of cruel and unusual punishment under the Eighth Amendment, but declining to reach the issue in a First Amendment case); Williams v. Ollis, 230 F.3d 1361 (6th Cir. 2000) (unpublished table decision) (stating that the plaintiff's First Amendment claim was not precluded by § 1997e(e)). The First Circuit Court of Appeals has not addressed the application of § 1997e(e) to First Amendment claims, but a district court in Massachusetts held that § 1997e(e) does not apply to violations of abstract rights reasoning that "the harms proscribed by the First Amendment, Due Process, or Equal Protection are assaults on individual freedom and personal liberty, even on spiritual autonomy, and not on physical well-being." Shaheed-Muhammad v. Dipaolo, 138 F. Supp. 2d 99, 101 (D. Mass. 2001). Lastly, district courts in the Second Circuit have also held that § 1997e(e) does not apply to First Amendment claims. See Lipton v. County of Orange, 2004 WL 876051, at *16-*17 (S.D.N.Y. Apr. 14, 2004); Amaker v. Haponik, 1999 WL 76798, at *7-*8 (S.D.N.Y. Feb. 17, 1999); Birth v. Pepe, 1999 WL 684162, *2 (E.D.N.Y. July 21, 1999).[4]

Only three circuits have definitively held that the PLRA's physical injury requirement applies to all constitutional claims. In Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000), the Third Circuit asserted that § 1983 compensatory damages are governed by general tort-law compensation theory and the plain language of § 1997e(e) makes no distinction between different types of federal action. The Tenth Circuit in Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001), also held that

---

[4] The majority cites to Thompson v. Carter, 284 F.3d 411 (2d Cir. 2002), and asserts that the Second Circuit has held that § 1997e(e) applies to First Amendment claims. Thompson, however, involved § 1997e(e)'s application to an Eighth Amendment claim, not a First Amendment claim. District courts in the Second Circuit, both before and after Thompson, have recognized that the two claims are distinct and have not applied § 1997e(e) to First Amendment claims such as the one before us.

"[t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted," therefore "[t]he statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." The D.C. Circuit in Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998), also held that § 1997e(e) bars compensatory damages for First Amendment claims without physical injury.

Our court has yet to reach this issue. We are, however, faced with an intra-circuit split: two district courts have considered the applicability of § 1997e(e) to constitutional claims and have reached opposite results. In Mason v. Schriro, 45 F. Supp. 2d 709, 719 (W.D. Mo. 1999), the court held that § 1997e(e) did not prevent the plaintiff from recovering damages for violations of the Fourteenth Amendment because such actions are not brought for mental or emotional injury. The court in Todd v. Graves, 217 F. Supp. 2d 958, 961 (S.D. Iowa 2002), however, declined to follow Mason and held that § 1997e(e) barred recovery of compensatory damages for violations of Fourteenth Amendment rights.

Absent guidance from our circuit, I look to the statute itself to determine if it was intended to limit constitutional claims. When interpreting a statute, a court should always begin with the plain meaning of the statute. Dowd v. United Steel Workers of Am., Local No. 286, 253 F.3d 1093, 1099 (8th Cir. 2001). If the plain language of the statute is unambiguous, the judicial inquiry ends. Id. Courts interpreting the plain language of § 1997e(e), however, have reached differing results which leads me to the conclusion that the language is neither plain nor unambiguous.

Some courts read § 1997e(e) and focus on the language "*for* mental or emotional injury." These courts have generally held that § 1997e(e) does not apply to First Amendment claims reasoning that First Amendment claims are not claims *for* mental or emotional injury, but are *for* violations of intangible and invaluable rights whose deprivation is an injury in and of itself.

-14-

Other courts, however, focus on the statute's "*no* Federal civil action" language. They argue that the use of the word "no" shows Congress's intent that there not be any exceptions to the physical injury requirement. They reason that, in order to receive compensatory damages, the plaintiff must prove a compensable injury which, under general tort-law theory, is limited to physical or emotional injury. Therefore, if a claim does not allege a physical injury, as most First Amendment claims do not, yet seeks compensatory damages, the plaintiff must be asserting a claim for mental or emotional damages which would be barred under § 1997e(e). One court, however, focused on this same "plain language" yet reached the opposite result. Amaker, 1999 WL 76798, at *7. In that case, the district court held that § 1997e(e) does not apply to First Amendment claims reasoning that if the physical injury requirement applied to *all* federal civil suits the language "for mental or emotional injury" would be superfluous which is "contrary to the well-established principle that all words in a statute should be read to have meaning." Id. In other words, "[i]f Congress had intended to apply § 1997e(e)'s restriction to all federal civil suits by prisoners, it could easily have done so simply by dropping the qualifying language 'for mental or emotional injury.'" Id.

Although many courts, and the majority in this case, have found that the language of § 1997e(e) is "unmistakably clear" (ante at 5), based on the current circuit split as to whether § 1997e(e) applies to First Amendment claims, I disagree. Accordingly, because the plain language of the statute is ambiguous, I believe we must consider "the purpose, the subject matter and the condition of affairs which led to its enactment." United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (internal quotation marks omitted). Furthermore, "[w]hen the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purpose of the law." Id.

The legislative history of the PLRA shows a clear legislative intent to decrease the number of frivolous lawsuits filed by inmates. There is nothing in the legislative

history of § 1997e(e), however, to suggest that Congress's intent was to prevent legitimate constitutional claims simply because the prisoner suffered no physical injury.[5]  Although the bill was called "far-reaching," the Senate focused almost exclusively on limiting "non-meritorious" and "frivolous" inmate litigation, while assuring that the legislation would not prevent legitimate claims and would actually "help protect convicted criminals' constitutional rights." 141 Cong. Rec. S14317 (1995) (statement of Sen. Abraham).  According to Senator Hatch, the PLRA was intended to "help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits . . . and will ensure that Federal court orders are limited to remedying actual violations of prisoners' rights." 141 Cong. Rec. S14418 (1995). The Senators repeatedly stated that legitimate constitutional claims would not be prevented.  Instead, the legislation was aimed at prisoners who "file free lawsuits in response to almost any perceived slight or inconvenience." Id. (statement of Sen. Kyl).  Examples of such frivolous lawsuits presented by the Senators included: inadequate locker space; a bad haircut given by a prison barber; the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee; being served chunky instead of creamy peanut butter; being denied the use of a Gameboy video game; being issued shoes that were a quarter size too big; being served "hacked

---

[5] To be fair, there is almost nothing in the legislative history as to § 1997e(e) at all.  According to one scholar, "[n]o aspect of the PLRA received less congressional deliberation than § 1997e(e)." James E. Robertson, *Psychological Injury and the Prison Litigation Reform Act: A "Not Exactly" Equal Protection Analysis*, 37 Harv. J. on Legis. 105, 114 (2000); see also Zehner v. Trigg, 952 F. Supp. 1318, 1325 (S.D. Ind. 1997) ("The legislative history contains virtually no discussion specifically concerning . . . § 1997e(e)."), Benjamin v. Jacobson, 935 F. Supp. 332, 340 (S.D.N.Y. 1996) ("[I]t is worth noting that some believe that [the PLRA] which has a far-reaching effect on prison conditions and prisoners' rights deserved to have been the subject of significant debate.  It was not.  A single Senate hearing before the Judiciary Committee, one substantive House Report, and some floor debate is all we can find.").

up" cake for dessert; prison officials throwing out an inmate's belongings after he escaped; and being denied dental floss.

There is a clear difference between the types of claims listed by Congress and historically actionable and meritorious claims under the First and Fourteenth Amendments. When a plaintiff files suit for a violation of his First Amendment rights, his claim is based on a deprivation of an intangible right. Whether his claim is valid is not linked to the existence or severity of his mental or emotional anguish. Certainly First Amendment violations can result in mental or emotional injury, and perhaps even physical injury, but § 1983 claims for First Amendment violations are not brought to redress such injuries. They are brought to redress the actual violation of the right. This is supported by the purpose behind the First Amendment. The First Amendment "is not concerned with preventing physical abuse by government agents, but rather with the invasion of the 'sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.'" Shaheed-Muhammad, 138 F.Supp at 108 (quoting West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943)). In addition, First Amendment violations occur at the time of the deprivation, not at a later time when the physical or emotional harm manifests. First Amendment rights "are abridged the moment a state silences free speech or prevents a citizen from following the precepts of his religion. While the violation may be accompanied by psychological or even physical injury, the severity of incursion is not necessarily measured in those terms." Id. at 101.

The PLRA has many provisions other than § 1997e(e) which serve to prevent frivolous lawsuits, including frivolous First Amendment suits. The PLRA: 1) requires prisoner-plaintiffs to exhaust all administrative remedies before filing § 1983 actions; 2) requires prisoner-plaintiffs pay the initial filing fee or make monthly installment payments from their personal accounts when bringing suits in forma pauperis (IFP); 3) makes it easier for judges to dismiss malicious or frivolous suits;

-17-

4) prohibits a prisoner from filing a suit IFP after having three previous suits dismissed as frivolous, malicious, or failing to state a claim; and 5) allows judges to revoke an inmate's good time credit as a sanction for filing a malicious claim, filing a claim solely to harass the defendant, testifying falsely, or presenting false evidence. All of these provisions serve Congress's intent of decreasing frivolous lawsuits without effecting the ability of prisoners to vindicate there legitimate constitutional claims. Royal's ability to withstand all of these hurdles is further proof that his claim was not frivolous and was not they type of claim Congress intended to thwart.

### III. CONCLUSION

Royal's claim is not frivolous. As found by the magistrate judge, Royal's First Amendment rights were violated when he was placed in segregation in retaliation for exercising his constitutional rights. Based on the language of § 1997e(e), the "purpose, subject matter and the condition of affairs which led to its enactment," and the other significant provisions of the PLRA which serve to put a stop to frivolous prisoner litigation, I would find that Royal's claim for compensatory damages is not barred by § 1997e(e) of the PLRA.

_____