RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

KEVIN KING,
              *Plaintiff-Appellant/Cross-Appellee*,

  *v.*

                                                            Nos. 13-1766/1777

CHUCK ZAMIARA, CURTIS CHAFFEE, SHARON WELLS,
in their individual and official capacities,
              *Defendants-Appellees/Cross-Appellants*.

———————————

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 4:02-cv-00141—Robert Holmes Bell, District Judge.

Decided and Filed: June 1, 2015

Before: COLE, Chief Judge; MOORE, Circuit Judge; BECKWITH, District Judge.[*]

———————————

## COUNSEL

**ON BRIEF:** Gregory N. Longworth, CLARK HILL PLC, Grand Rapids, Michigan, for Appellant/Cross-Appellee. Kevin R. Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees/Cross-Appellants.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. In this appeal, we decide whether 42 U.S.C. § 1997e(e), a provision of the Prison Litigation Reform Act ("PLRA"), precludes prisoners from asserting meritorious § 1983 claims alleging First Amendment violations merely because those violations did not also cause physical harm. After Kevin King, an inmate held by the Michigan

———————————

[*]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

Department of Corrections ("MDOC"), participated in a class-action lawsuit designed to challenge personal property policies at MDOC facilities (the "*Cain* litigation"), prison officials transferred him to a prison with a higher security classification and more restrictive conditions. King filed suit against Chuck Zamiara, Curtis Chaffee, Sharon Wells, and other prison officials (the "prison officials") under 42 U.S.C. § 1983. We have previously held that Zamiara, Chaffee, and Wells are liable for retaliating against King for his First Amendment-protected conduct, namely participating in the *Cain* litigation and assisting other petitioners to file grievances. After we remanded the case back to the district court, the court granted compensatory damages and awarded attorney fees, but denied punitive damages and injunctive relief. Both parties appealed. For the following reasons, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Our previous opinions thoroughly discuss the facts of this case. *See King v. Zamiara*, 680 F.3d 686, 688–94 (6th Cir. 2012) ("*King V*"). As pertinent to this appeal, the facts are as follows: Kevin King was incarcerated in 1983 after his conviction for first-degree murder. As of November 1999, King was housed in the Conklin Unit at Brooks Correctional Facility ("Brooks"), a Level II facility. On April 20, 2000, Sharon Wells, the Resident Unit Manager of Conklin Unit, requested that King be transferred to another unit because he was "becoming increasingly more powerful in the eyes of the prisoners in Conklin Unit." R. 11-2 (Wells Memo) (Page ID #132). Curtis Chaffee, the transfer coordinator at Brooks, requested that Chuck Zamiara, an MDOC classification specialist, approve a transfer to another Level II facility. R. 130-3 (Chaffee/Zamiara Email) (Page ID #788). After consulting with Classification Director Nick Ludwick, Zamiara instead approved a transfer to a Level III facility because King was "preceived [sic] as a disruptive prisoner who is manipulating others to create unrest." *Id.* The security screen entered into King's file was hand-edited to replace a note that King was "manageable in Level II" with a note scoring him at Level III. R. 130-3 (Chaffee Screen) (Page ID #784). King was transferred to Chippewa Correctional Facility ("Chippewa"), a Level III facility, on May 17, 2000.

A Level III facility operates under more heightened security procedures than a Level II facility. Although the Warden testified that "[t]here's very little difference" between the two security levels and that each facility sets its own schedules and programming, R. 171 (Trial Tr. I at 125–26) (Page ID #1557–58), another prison official testified that there were differences between Level II and Level III facilities in terms of visitation, programming, and activities. R. 172 (Trial Tr. II at 272–74) (Page ID #1706–08). In addition, King testified to several substantial differences between the two facilities. King explained that his access to other prisoners during "yard time" and free time in the day rooms was significantly restricted at the Level III facility. He was inhibited from "communicat[ing] with who [he] wanted to" because he was unable to move freely between common spaces. R. 171 (Trial Tr. I at 92–97) (Page ID #1524–29). The movement restrictions in Level III affected King's ability to assist with the *Cain* litigation: "I was less able to get affidavits, declarations to discover what was going on with the department up there at the time because I was pretty much secluded. I had to move with the masses that they chose that I move with." *Id.* at 98 (Page ID #1530). King continually objected to his Level III classification, and in February 2001 he was approved for a transfer to Thumb Correctional Facility, a Level II facility.

On July 26, 2002, King filed a pro se complaint alleging First Amendment retaliation against several MDOC employees. R. 1 (Compl.) (Page ID #1–18). The district court granted summary judgment in favor of the defendants, concluding that King had not engaged in any form of protected conduct. R. 30 (D. Ct. Order) (Page ID #352). King appealed, and we reversed. *King v. Zamiara*, 150 F. App'x 485 (6th Cir. 2005) ("*King I*"). We concluded that King made a prima facie showing of the elements of his First Amendment retaliation claim: that his participation in the *Cain* litigation and his assistance to other prisoners in filing grievances were examples of First Amendment-protected conduct, that the defendants took "adverse" actions against him by increasing his security level and charging him with misconduct tickets, and that there was a causal connection between the protected activity and the increase in security level. *King I*, 150 F. App'x at 491–95. We remanded the case to the district court to determine whether the defendants were entitled to qualified immunity. *Id.* at 490.

On remand, the district court granted the defendants' motion to dismiss on the basis of qualified immunity. *King v. Zamiara*, No. 4:02-cv-141, 2006 WL 2439732, at *1 (W.D. Mich. Aug. 22, 2006) ("*King II*"). King appealed, and we again reversed. *King v. Zamiara*, No. 06-2271, slip op. at 4 (6th Cir. April 26, 2007) ("*King III*"). On remand, both parties moved for summary judgment, and the district court granted both motions in part. The case proceeded to trial on the question of causation. Following a two-day bench trial, the district court found in favor of the defendants. *King v. Zamiara*, No. 4:02-CV-141, 2009 WL 3424221, at *9 (W.D. Mich. Oct. 20, 2009) ("*King IV*").

King appealed once again. We affirmed the district court's judgment as to two of the defendants because King presented insufficient proof that those defendants had knowledge of the constitutional violation and retaliatory motive. *King V*, 680 F.3d at 705–07. We reversed the district court's judgment with respect to Wells, Chaffee, and Zamiara, and remanded the case for entry of judgment in favor of King as against the three defendants. *Id.* at 710. On remand, the district court entered judgment in favor of King, and ordered $1,475 in compensatory damages and $2,212.50 in attorney fees. *King v. Zamiara*, No. 4:02-CV-141, 2013 WL 2102655 (W.D. Mich. May 14, 2013) ("*King VI*"). The district court denied King's request for punitive damages and injunctive relief. Both parties now appeal the judgment.

## II. COMPENSATORY DAMAGES

### A. Applicability of § 1997e(e) to First Amendment Claims

The district court granted a compensatory-damages award to King because the retaliatory increase in his security level deprived him of his First Amendment right to participate in the *Cain* litigation. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The applicability of this provision to claims alleging First Amendment deprivations has been a matter of significant debate. Many circuits, following common-law tort principles[1], conclude that First Amendment claims that do not allege physical injury necessarily allege compensable injury only

---

[1]At common law, a claim for compensatory damages must allege actual injury in the form of bodily or emotional harm. Restatement (Second) of Torts § 905.

in the form of mental or emotional harms. *See, e.g.*, *Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 723–24 (8th Cir. 2004); *Searles v. Van Bebber*, 251 F.3d 869, 875–76 (10th Cir. 2001); *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000). Others have determined that claims alleging "deprivation[s] of First Amendment rights entitle[] a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (concluding that a prisoner's claim based on a guard's attempt to convert him to Christianity asserted a right to relief for a violation of his First Amendment rights, not for "mental or emotional injury"); *see also Royal*, 375 F.3d at 730 (Heaney, J., dissenting) ("Certainly First Amendment violations can result in mental or emotional injury, and perhaps even physical injury, but § 1983 claims for First Amendment violations are not brought to redress such injuries. They are brought to redress the actual violation of the right."); *Rowe v. Shake*, 196 F.3d 778, 781–82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."). In *Rowe*, the court reasoned that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Id.* at 781 (internal quotation marks omitted). Thus, the prisoner's allegation that he suffered a First Amendment injury as a consequence of interference with his mail delivery was cognizable under the PLRA, even absent allegations of additional physical injury. *Id.*; *see also Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999) ("It would be a serious mistake to interpret section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits. The domain of the statute is limited to suits in which mental or emotional injury is claimed.").

The Sixth Circuit has never squarely addressed in a published opinion whether § 1997e(e) bars claims alleging First Amendment violations that do not result in physical injury. *See Taylor v. United States*, 161 F. App'x 483, 487 (6th Cir. 2005) (declining to address the issue because the prisoner failed to exhaust his administrative remedies). *But see Williams v. Ollis*, 230 F.3d 1361 (6th Cir. 2000) (unpublished table order) (permitting a prisoner to pursue a claim for money damages arising from First Amendment violations). For the following reasons, we are persuaded that deprivations of First Amendment rights are themselves injuries, apart from any

mental, emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to First Amendment rights.

When interpreting a statute, we begin with the plain meaning of the statutory language. *Walker v. Bain*, 257 F.3d 660, 666 (6th Cir. 2001). "Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant." *Id.* at 667. The majority of circuits embrace a broad view of the PLRA's statutory language and conclude that, regardless of the underlying constitutional violation, if the plaintiff fails to allege physical injury, § 1997e(e) bars compensatory damages. *See, e.g.*, *Geiger*, 404 F.3d at 374–75. However, this interpretation does not accord with the statutory language: The statute provides that a prisoner may not bring a civil action *for mental or emotional injury* unless he has also suffered a physical injury. 42 U.S.C. § 1997e(e). It says nothing about claims brought to redress constitutional injuries, which are distinct from mental and emotional injuries. *See Rowe*, 196 F.3d at 781–82 ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."); *Canell*, 143 F.3d at 1213 (same). Were we to construe § 1997e(e) as the majority of courts have done, thereby grafting a physical-injury requirement onto claims that allege First Amendment violations as the injury, the phrase "for mental or emotional injury" would be rendered superfluous. *See Amaker v. Haponik*, No. 98 CIV 2663, 1999 WL 76798, at *7 (S.D.N.Y. Feb. 17, 1999). Therefore, the plain language of the statute does not bar claims for constitutional injury that do not also involve physical injury. *See Robinson*, 170 F.3d at 748 (Posner, J.) ("It would be a serious mistake to interpret section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits. The domain of the statute is limited to suits in which mental or emotional injury is claimed.")

Accordingly, we hold that § 1997e(e) does not foreclose claims that allege violations of First Amendment-protected rights as injuries. King's claim alleges a constitutional injury distinct from any mental or emotional injury he might have suffered: He claims that he was placed in a higher security facility for approximately ten months in retaliation for his exercise of his First Amendment rights. R. 1 (Compl. ¶ 50) (Page ID #8). While at the more secure facility, King suffered infringements on his First Amendment rights because additional restrictions on his

movements hindered his attempts to collect affidavits and declarations from other prisoners to assist in the *Cain* litigation.  R. 171 (Trial Tr. I at 98) (Page ID #1530).  Because King's claim is not "for mental or emotional injury," § 1997e(e) does not preclude his claim merely because he does not also claim physical injury.

**B.  Compensatory Damages Award**

King can recover compensatory damages for the violation of his First Amendment rights in this case.  A plaintiff who alleges the violation of a constitutional right is not entitled to compensatory damages unless he can prove actual injury caused by the violation.  *Carey v. Piphus*, 435 U.S. 247, 264 (1978).  Moreover, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986); *see also Parrish v. Johnson*, 800 F.2d 600, 607 (6th Cir. 1986).  The *Stachura* court made clear, however, that "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate."  *Stachura*, 477 U.S. at 310–11. In these cases of difficult-to-establish injuries, "presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure."  *Id.* at 311.  As an example of such a situation, the Supreme Court "cited with approval the long line of cases which uphold money damages as compensation for persons deprived of their right to vote."  *Walje v. City of Winchester*, 827 F.2d 10, 12 (6th Cir. 1987). The Supreme Court explained that in one of these cases, *Nixon v. Herndon*, 273 U.S. 536 (1927), the award of damages "did not rest on the 'value' of the right to vote as an abstract matter; rather, the Court recognized that the plaintiff had suffered a particular injury—his inability to vote in a particular election—that might be compensated through substantial money damages."  *Stachura*, 477 U.S. at 311 n.14.

In sum, a plaintiff must demonstrate that he or she suffered an actual injury in order to receive compensatory damages for violations of his or her constitutional rights.  When it is difficult to quantify precisely the damages caused by that injury, presumed damages may be awarded, but "[t]he award must focus on *the real injury sustained* and not on either the abstract value of the constitutional right at issue, *see Carey*, or the importance of the right in our system

of government, *see Stachura*." *Piver v. Pender Cnty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987) (emphasis added).

Accordingly, courts have allowed plaintiffs to recover presumed damages for actual injuries caused by constitutional violations that are "likely to have occurred" but difficult to measure, even when the injury claimed is neither physical harm nor mental or emotional distress. In *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987), the Seventh Circuit affirmed the district court's decision that a city ordinance limiting door-to-door soliciting to between 9:00 a.m. and 5:00 p.m. was unconstitutional and upheld the district court's award of $5,000 in compensatory damages to the plaintiff IPAC for the violation of its First Amendment rights. *Id.* at 1548, 1559. In addition to lost revenues, IPAC alleged less readily quantifiable injuries including "(1) its inability to recruit new members in Watseka, (2) its inability to disseminate its views to Watseka residents, and (3) its inability to encourage Watseka citizens to support IPAC positions on various issues by signing petitions or contacting local legislators." *Id.* at 1558. Although "the monetary value of the particular injury [was] difficult to ascertain," the Seventh Circuit upheld the district court's damages award because the court's "order ma[d]e[] it clear that [the court] was awarding IPAC damages because Watseka 'prevented [IPAC] from exercising its First Amendment rights in this case;' [the court] did not base the award on any abstract value of the constitutional right." *Id.* at 1559. The Seventh Circuit explained that the award was based on "specific compensable, non-abstract harm to IPAC . . . [as] seen from the specific injuries alleged by IPAC," and concluded that the "[t]he type of particular injury for which [the district court] awarded IPAC $5,000 is indistinguishable from the particular injury for which the Court approved compensatory damages in *Nixon v. Herndon*." *Id.*

Similarly, in *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004), the Second Circuit held that the district court erred in not instructing the jury that it could award the plaintiff compensatory damages for the loss of liberty he suffered as a result of the violation of his Fourth Amendment rights. *Id.* at 129. The Second Circuit explained that "the Supreme Court in *Stachura,* in disapproving the instructions that would have allowed an award based on the abstract societal value of constitutional protections, expressly distinguished that impermissible

abstraction from the theory that is pertinent here, to wit, the traditionally permissible concept of 'presumed damages.'" *Id.* at 130. The court then continued that "[t]he present case does not involve . . . an attempt to vindicate an abstract societal interest. Rather, it involves an anything-but-abstract physical detention. And although a given person's loss of time may be difficult to evaluate in terms of dollars, his loss of liberty is not just 'virtually certain' to occur; it is inseparable from the detention itself." *Id.*

In this case, the district court properly granted King compensatory damages for specific, actual injuries he suffered that "cannot be easily quantified." *King VI*, 2013 WL 2102655, at *3. The district court expressly noted that "[d]amages may not be awarded based on the abstract value or importance of the constitutional right that was violated." *Id.* Instead, the district court focused on the particular circumstances of King's case and the harms he suffered, explaining that "King has testified to an injury, i.e., the negative impact on his ability to obtain affidavits or declarations concerning prisoner property violations for use in the *Cain* litigation."[2] Like the courts in *City of Watseka* and *Kerman*, the district court invoked the concept of presumed damages, and was careful to focus on approximating the value of the harm King actually suffered on the facts of this case, not on the abstract value or importance of his First Amendment rights.

As for the amount of the damages the district court awarded, "[a] trial court's finding of fact on the issue of compensatory damages is not reversible error unless it manifests plain injustice, or is so grossly excessive as to be clearly erroneous." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 485 (6th Cir. 2005) (internal quotation marks omitted); *see also Smith v. Heath*, 691 F.2d 220, 226 (6th Cir. 1982). The district court concluded, following a bench trial, that King should be awarded presumed damages of $5 per day spent at the more restrictive prison facility. "No formula exists to determine with precision compensatory damages. The

---

[2]While King did not provide evidence to quantify the extent to which his elevated security classification prevented him from collecting affidavits for the *Cain* litigation, his testimony supports the conclusion that he was actually impeded in his efforts to exercise his First Amendment rights. *See* R. 171 (Trial Tr. at 96–102) (Page ID #1528–34). In addition, King has not provided evidence to isolate which differences between the two facilities resulted from the security level increase as opposed to normal variance between different facilities. However, as a logical matter, at least a portion of the additional restrictions at Chippewa must have been attributable to the increase in security classification: if there were truly no substantive difference between security levels, the MDOC would have no reason to create distinct security level classifications. And King should not be faulted for failing to quantify the extent of an injury that merits presumed damages because it is difficult to measure. *See Parrish*, 800 F.2d at 606–07. Thus, at least part of King's constitutional injury suffered after his transfer to Chippewa is attributable to the retaliatory increase in his security level.

amount is left to the sound discretion of the fact finder." *Smith*, 691 F.2d at 227 (affirming a compensatory damages award of $5,000 to a plaintiff alleging that his apartment was unconstitutionally searched). The award calculated by the district court is not disproportionate to compensatory damages awarded to other prisoners who suffered retaliation after exercising their First Amendment rights. *See Bell v. Johnson*, 404 F.3d 997, 999, 1003 (6th Cir. 2005). King makes much of *Trobaugh v. Hall*, 176 F.3d 1087 (8th Cir. 1999), an Eighth Circuit case that recommended approximately $100 per day as an appropriate compensatory award for the deprivation of First Amendment rights resulting from a higher security classification. *Id.* at 1088–89. However, the *Trobaugh* court considered different procedural and factual circumstances than those King presents. In that case, the reviewing court disturbed the district court's judgment only because the nominal award of $1 was "patently insufficient to compensate Trobaugh for the injury he suffered by being placed in segregation in retaliation for exercising a constitutional right." *Id.* at 1088–89. By contrast, King received a substantial compensatory award for a less severe retaliatory action: King was transferred to the general population at a more restrictive facility, where he still had at least limited opportunities to exercise his First Amendment rights and interact with other prisoners, as opposed to segregation, which completely extinguishes those rights. According appropriate deference to the district court's exercise of discretion, we cannot say that the compensatory award was an abuse of discretion. Therefore, we affirm the district court's grant of compensatory damages in the amount of $1,475.

### III. PUNITIVE DAMAGES

Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." *Stachura*, 477 U.S. at 306 n.9. We review a decision to deny punitive damages for abuse of discretion. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432–33 (2001).

The district court interpreted our opinion in *King V*, 680 F.3d 686 (6th Cir. 2012), narrowly and concluded that our holding did not "require[] a finding that these Defendants were

motivated by evil motive or intent, or callous indifference to King's protected rights." *King VI*, 2013 WL 2102655, at \*4. Accordingly, the district court concluded that the "[d]efendants' conduct in this case does not meet the standard for awarding punitive damages." *Id.* In doing so, the district court misapplied the governing legal standard. Although punitive damages may be available upon a showing of "evil motive or intent" or "callous indifference," *see Smith*, 461 U.S. at 56, punitive damages are also appropriate when a defendant's action involves even reckless disregard of the plaintiff's rights. *Id.* at 51 ("[R]eckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages."); *see also Searles*, 251 F.3d at 880 (concluding that a punitive damages award would have been appropriate, had the jury been properly instructed, because "a reasonable jury could find from th[e] evidence that defendant's actions were in reckless disregard of plaintiff's rights"). When a defendant retaliates against a plaintiff's exercise of his First Amendment rights, the defendant necessarily acts with the purpose of infringing upon the plaintiff's federally protected rights. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (requiring a plaintiff to show, as an element of a First Amendment retaliation claim, that the defendant's "adverse action was motivated at least in part by the plaintiff's protected conduct"). Thus, a defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages. By concluding that the defendants did not engage in conduct that "meet[s] the standard for awarding punitive damages," the district court erred in applying the governing legal standard and abused its discretion. Accordingly, we believe that remand is warranted.

On remand, the district court is permitted to consider whether or not to award King punitive damages. "[A] key feature of punitive damages [is] that they are never awarded as of right, no matter how egregious the defendant's conduct." *Smith*, 461 U.S. at 52. Rather, once the plaintiff proves that the defendant's conduct triggers consideration of punitive damages, the factfinder makes the "discretionary moral judgment" whether or not to award punitive damages. *Id.* In exercising his discretion, the factfinder should consider that "[t]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct *and* to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n.9 (emphasis added).

The district court should bear in mind that we have determined that Wells, at least, inflicted harm on King with "animus" against his protected activities. *King V*, 680 F.3d at 702. Moreover, all of the defendants purposefully deprived King of his fundamental constitutional rights by assisting in his transfer with the intention to retaliate. In addition, nothing in the record suggests that a punitive damages award would not have its intended deterrent effect upon the defendants.[3] *Cf. Royal v. Kautzky*, 375 F.3d 720, 725 (8th Cir. 2004) (concluding that the deterrent purposes of a punitive damages award would not be served because the individual defendant had already retired). Indeed, the deterrent value of punitive damages is particularly important under these circumstances because a prisoner may not seek to deter prison officials from violating his rights through the ordinary mechanism of compensatory damages. With this guidance, we reverse the district court's denial of punitive damages and remand with instructions to the district court to exercise its discretion in considering whether to make an award of punitive damages.

## IV. INJUNCTIVE RELIEF

We utilize a number of different standards when reviewing a district court's decision to grant or deny a permanent injunction: "Factual findings are reviewed under the clearly erroneous standard, legal conclusions are reviewed de novo, and the scope of injunctive relief is reviewed for an abuse of discretion." *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, 388 F.3d 955, 958 (6th Cir. 2004) (internal quotation marks omitted). King argues that the court should enter an injunction requiring MDOC to remove certain documents from his file because they violate his due-process rights. Injunctive relief on this basis is unwarranted, however, because we have found no due-process violation. In *King I*, 150 F. App'x 485, 496–97 (6th Cir. 2005), we affirmed the district court's dismissal of King's due-process claim because he failed to file an objection to the magistrate judge's recommendation that summary judgment be granted in favor of the prison officials on the due-process claim. Because the due-process claim is not at issue in this suit, we may not grant injunctive relief to remedy an alleged due-process violation. *See De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). As the district court correctly noted, the appropriate injunctive

---

[3]We stress, however, that the district court should assess the actions of each defendant individually in determining whether punitive damages are warranted as to each defendant.

remedy for the retaliatory increase in King's security level is restoration to the correct security level. King has already been transferred back to a Level II prison facility. R. 1 (Compl. ¶ 50). Therefore, we affirm the district court's denial of injunctive relief.

## V. ATTORNEY FEES

In § 1983 actions, the court may, in its discretion, award a reasonable attorney fee to the prevailing party. 42 U.S.C. § 1988(b). However, the PLRA limits the attorney fee to 150 percent of the money judgment. *Riley v. Kurtz*, 361 F.3d 906, 911 (6th Cir. 2004); 42 U.S.C. § 1997e(d)(2). The district court awarded attorney fees in the amount of $2,212.50, which represented 150 percent of the monetary damages award. We review a district court's grant of attorney fees for abuse of discretion. *Riley*, 361 F.3d at 910. The district court properly applied the statute to calculate the appropriate award of attorney fees. However, because we hold that the district court abused its discretion in denying punitive damages, the district court should recalculate the appropriate cap on attorney fees on remand.

Finally, the district court misapplied the PLRA's attorney fees provision when it failed to charge a portion of the attorney fees against King's judgment. The PLRA provides that "[w]henever a monetary judgment is awarded . . . a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." 42 U.S.C. § 1997e(d)(2). The district court's failure properly to apply pertinent statutory language when calculating an award of attorney's fees is an abuse of discretion. *See Johnson v. Breeden*, 280 F.3d 1308, 1326–27 (11th Cir. 2002) (finding an abuse of discretion when the district court ignored the limitations imposed by §1997e(d)(1)(A) and instead used the "lodestar method" to calculate attorney fees). Neither the statute nor our cases provide guidance to assist district courts in determining the appropriate percentage. However, some courts have determined that requiring plaintiffs to pay as little as $1 in attorney fees from the judgment is appropriate. *See Murphy v. Gilman*, Nos. 03-145, 04-103, 2008 WL 2139611, at *2 (W.D. Mich. May 20, 2008); *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 822–23 (E.D. Mich. 2006). On remand, if the district court determines that an award of punitive damages is appropriate, we instruct the district court to exercise its discretion to apply some percentage of the judgment, not to exceed 25 percent, to attorney fees.

## VI.  CONCLUSION

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** with instructions to award damages and fees consistent with this opinion.