**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALTON RAYMOND AMES,

      Plaintiff-Appellant,

v.

REX BROWN, KENNETH DALE
HIGGINS, MICHAEL DEAN
METCALF, and MARK BRUNING,

      Defendants-Appellees.

No. 05-6389
(D.C. No. CIV-02-1368-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL** and **TYMKOVICH,** Circuit Judges.

Plaintiff-Appellant Alton Raymond Ames appeals the district court's grant

of summary judgment in favor of Defendants-Appellees Rex Brown, the Deputy

Chief of Police for the City of Guthrie; Mark Bruning, a Guthrie police

department officer; and Kenneth Dale Higgins and Michael Dean Metcalf,

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

Stillwater police department officers. Ames alleges that these Defendants are liable for punitive damages for violating his Fourth Amendment rights while executing a search warrant. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand.

## BACKGROUND

### I. Factual Background[1]

On October 3, 2000, Ames spent the night at the mobile home of friends, Todd and Connie Jester. Early the next morning, officers of the Guthrie and Stillwater police departments and the Logan County Sheriff's office executed a valid search warrant at the Jesters' residence, looking for methamphetamine and equipment to manufacture methamphetamine. During the search, officers patted Ames down for weapons, handcuffed him, and brought him outside of the trailer. Officers then removed Ames's pants and underwear[2] so that he was naked from the waist down, and Ames was forced to stand outside the trailer partially nude as

---

[1] By failing to timely respond to Defendants' summary judgment motions, Ames "waive[d] the right . . . to controvert the facts asserted in the [Defendants'] summary judgment motion[s]." Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). We therefore "accept as true all material facts asserted and properly supported in the [Defendants'] summary judgment motion[s]," id., and disregard Ames's attempt on appeal to put these facts into dispute. We note, however, that Ames's recitation of the facts on appeal would ultimately not affect our analysis.

[2] Although there is some dispute about whether Ames was wearing underwear, his affidavit so states and it was included in the Defendants' motion for summary judgment. Reviewing the evidence in the light most favorable to Ames, we accept his affidavit in this regard.

officers entered and exited the trailer until the search was complete.[3]  Ames claims that, both when his clothes were removed and during the subsequent search of the Jesters' property, officers taunted and teased him.  Eventually, Ames, who was still partially naked, was transported to the Logan County Jail, forced to walk from the patrol car into the jail, and shackled to a bench in a cell until his booking was complete when he was finally put into jail clothing.

Although there were numerous officers who engaged in this search, Ames has sued only Defendants Higgins, Brown, Metcalf, and Bruning.

A.      Defendant Higgins

Defendant Higgins, along with Defendant Bruning and other officers, entered the Jesters' residence and immediately noticed a strong chemical odor, which the officers associated with methamphetamine.  Inside the residence were a female; a small child; and three males, one of which was Ames.  Defendant Higgins "covered" the four adults while other officers patted them down for weapons and handcuffed them.  Defendant Bruning had the four adults taken outside because he was "unsure of the chemical condition inside the house."

---

[3]  The identity of the officers who actually removed Ames's clothing is unknown because Ames's glasses were broken during the arrest and he was therefore unable to see subsequent events clearly.  Ames testified that his information as to which officers violated his constitutional rights was based solely on the evidence presented at his criminal trial.  Because of his inability to see, Ames admitted that it was possible that the defendants he had sued were not involved in the actual stripping of his clothing.  The record indicates, however, that Defendant Bruning made the decision to remove Ames's clothing.

Defendant Higgins testified that, after covering the occupants of the trailer while they were patted down by other officers, he had no further contact with Ames. Once the occupants were removed from the residence, Defendant Higgins retrieved processing equipment from his patrol car and began assisting Defendant Metcalf in logging evidence removed from the trailer and securing samples. Defendant Higgins did not arrest Ames or transport him to jail. He did not remove Ames's clothing and was not present when the other officers did.[4]

## B. Defendants Brown and Metcalf

Defendants Brown and Metcalf were assigned to cover the perimeter of the residence during the execution of the warrant. After the occupants had been removed from the trailer, Defendant Metcalf put on protective gear in order to retrieve evidence from inside the trailer. On one of his trips out of the trailer, he noticed that Ames's clothing had been removed and asked why. He was told by another officer that Ames's clothes were contaminated with chemicals. Defendant Metcalf then asked if there were extra clothes or a blanket for Ames to wear, but he was informed there were not any available.[5] After the residence was secured, Defendant Brown spent the entire rest of the search inspecting the

_____

[4] Defendant Higgins acknowledges that Defendant Bruning at some point told him that Ames's clothes had been removed because they were contaminated.

[5] Defendant Bruning testified that the officers could not go back in the house to get clothes for Ames.

- 4 -

surrounding woods and a travel trailer parked on the property. Neither of these Defendants had any contact with Ames.

### C. Defendant Bruning

Defendant Bruning was in charge of execution of the warrant on the Jesters' residence. In that role, he gave the officers their assignments regarding execution of the warrant and continued to give the officers orders during the search. After the occupants of the trailer were patted down and handcuffed, Defendant Bruning, who had entered the trailer with Defendant Higgins, had the occupants taken outside. Either at Defendant Bruning's suggestion or with his approval, officers removed each of the male occupants' clothing. Defendant Bruning testified that Ames's clothing was visibly stained, and the officers were unsure whether the stains were from dirt or dangerous chemicals. Defendant Bruning claimed that the officers were concerned that Ames (and others) might be at risk if Ames were permitted to wear contaminated clothing and that any contaminants on Ames's pants could be transmitted to the back seat of the police car, endangering the officers or other prisoners. Defendant Bruning then reentered the trailer to assist in the search and allegedly had no further contact with Ames.

## II. Procedural Background

Following a jury trial, Ames was convicted of trafficking illegal drugs and conspiring to manufacture/possess a controlled dangerous substance. On

September 30, 2002, Ames filed a *pro se* state prisoner civil rights action against the Defendants pursuant to 42 U.S.C. § 1983, claiming that his Fourth Amendment rights against unreasonable searches and seizure were violated in connection with his arrest when his clothes were taken away unnecessarily upon his arrest and he was forced to remain partially naked throughout the arrest and booking procedure. Ames sought declaratory relief and compensatory and punitive damages. The district court first dismissed all but Ames's punitive damages claim, for which the court appointed counsel.[6] The court ultimately awarded summary judgment in favor of the Defendants on that claim. Ames filed a motion to reconsider, which the district court denied, and this *pro se* appeal followed.

## DISCUSSION

---

[6] The court dismissed Ames's claims for declaratory judgment, ruling that Ames lacked standing to obtain such relief. It dismissed Ames's compensatory damages claims because Ames did not allege any physical injuries as required by 42 U.S.C. § 1997e(e) for plaintiffs in prison. Finally, it dismissed Ames's conspiracy claims as deficiently pled.

In his brief, Ames asserts that the district court erred in 1) granting summary judgment in favor of Defendants on his punitive damages claim; and 2) denying his motion for reconsideration.[7]

**I.**

We construe Ames's appeal as first asserting that the district court erred in granting summary judgment pursuant to his counsel's failure to respond to the Defendants' motions for summary judgment. In this case, however, the district court did not rely solely on W.D. Okla. LCvR7.2(f) to award summary judgment as a sanction for Ames's failure to respond, but rather properly deemed the facts asserted in Defendants' motions for summary judgment confessed and based entry of summary judgment in favor of the Defendants upon its evaluation of the merits under Fed. R. Civ. P. 56.[8] We therefore turn to deciding, *de novo*, <u>see</u>

---

[7] As a preliminary matter, we note that many of Ames's arguments on appeal rest, in part, on his claim that his court-appointed counsel was ineffective. We cannot grant relief on this basis in a civil case. <u>Beaudry v. Corr. Corp. of Am.</u>, 331 F.3d 1164, 1169 (10th Cir. 2003).

[8] Deeming facts admitted under LCvR 7.2(f), which provides that "[a]ny motion that is not opposed . . . may, in the discretion of the Court, be deemed confessed," is not inconsistent with Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 83 (requiring district courts to construe and apply local rules in manner consistent with federal rules); <u>Reed</u>, 312 F.3d at 1195 (explaining that, in accordance with Rule 56, "[b]y failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion"). In this case, we cannot say that deeming the facts alleged in Defendants' summary judgment motion, which included Ames's deposition in which he asserted many of the facts he urges us to reconsider on appeal, was "an arbitrary,

(continued...)

Fuerschbach v. Southwest Airlines, Co., 439 F.3d 1197, 1207 (10th Cir. 2006),

whether the Defendants met their Rule 56 burden.[9]  Because Ames is asserting a

punitive damages claim based on an underlying Fourth Amendment claim that the

*manner* in which he was detained was unreasonable, the Defendants must

---

[8](...continued)
capricious, whimsical or manifestly unreasonable judgment." FDIC v. Oldenburg,
34 F.3d 1529, 1555 (10th Cir. 1994) (quotations omitted). Cf. Sports Racing
Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 894 (10th Cir. 1997)
(reviewing exclusion of evidence at summary judgment stage of proceedings for
abuse of discretion).

[9]    Pursuant to Rule 56(c), the moving party "always bears the initial
burden of informing the district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with any affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at
323 (quoting Fed. R. Civ. P. 56(c)).  Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the adverse
> party's response, by affidavits or as otherwise provided by this rule,
> must set forth specific facts showing that there is a genuine issue for
> trial.  If the party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Thus,

> [i]f the nonmoving party fails to respond, the district court may not
> grant the motion [for summary judgment] without first examining the
> moving party's submission to determine if it has met its initial burden
> of demonstrating that no material issues of fact remain for trial and the
> moving party is entitled to judgment as a matter of law.

Reed, 312 F.3d at 1195 (emphasis added); see also Adickes v. S.H. Kress & Co.,
398 U.S. 144, 160-61 (1970).

- 8 -

demonstrate both that no triable issue exists regarding either Ames's underlying Fourth Amendment claim or his punitive damages claim and that Defendants are entitled to judgment as a matter of law.[10]

A seizure violates the Fourth Amendment if the officer's actions were "'objectively [un]reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." See Graham v. Connor, 490 U.S. 386, 395, 397 (1989). "A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy." Franklin, 31 F.3d at 876. Where, as here, a suspect's constitutional right to bodily privacy is implicated, the reasonableness of the seizure or search receives special scrutiny. See, e.g., Cottrell v. Kaysville City, 994 F.2d 730, 734 (10th Cir. 1993) (weighing the need for a strip search against the "grave invasion of privacy it entails").

---

[10]    Despite initially asserting an Eighth Amendment claim, Ames later acknowledged that his claims were governed by the Fourth Amendment. See Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) (indicating that a seizure or search may be held unreasonable . . . if the officer carried out the seizure and/or search in an unreasonable manner). Specifically, Ames has alleged that it was unreasonable to strip him of his clothes and then, while he was still partially naked, force him to stand in front of the Jester's trailer where he was publicly exposed until the search was completed, transport him to the Logan County Jail, walk him several yards from the parking lot to the jail, shackle his leg to a bench in the holding cell, and hold him until the booking process was complete. See Franklin v. Foxworth, 31 F.3d 873, 876-77 (9th Cir. 1994) (concluding that a detention was unreasonable where officer removed a gravely ill man, who was not a suspect, from his bed, and required him to sit handcuffed for two hours, with his genitals exposed to twenty-three armed officers).

Assuming Ames's Fourth Amendment rights were violated, then punitive damages may be awarded only if the challenged conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001) (quotations omitted). Punitive damages are therefore available only if the violator knew or recklessly disregarded whether his conduct was prohibited by federal law. See Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989). Applying these standards, the district court awarded summary judgment in favor of Defendants. We affirm in part and reverse in part.

We agree that there is no evidence that Defendants Brown, Higgins, or Metcalf personally participated in the alleged constitutional violation. None of these individuals arrested Ames, removed his pants, transported him to jail, detained him at jail, or booked him. Additionally, there is no evidence that they supervised the execution of the warrant or supervised the officers who removed Ames's pants, transported him to jail, and booked him. See Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000) ("[T]o establish supervisory liability, a plaintiff must show an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.") (quotations, alterations omitted). Thus, we affirm summary judgment in favor of Defendants Brown, Higgins, and Metcalf.

However, we cannot similarly conclude that summary judgment was proper with regard to Defendant Bruning, who did personally participate in Ames's arrest and the decision to remove Ames's pants. Defendant Bruning maintains that he made that decision based on safety concerns that the clothing may be contaminated with dangerous chemicals. The district court ruled that no reasonable jury could conclude that Defendant Bruning acted with malice in removing Ames's clothing because 1) the warrant was obtained based on probable cause to believe that methamphetamine was being produced at the Jesters' residence; 2) officers detected a strong chemical odor upon entering the trailer; 3) Ames's clothing appeared stained and thus possibly contaminated; and 4) methamphetamine manufacturing materials were seized.

Certainly a reasonable jury <u>might</u> conclude that Defendant Bruning's decision to remove Ames's pants was reasonable and not motivated by evil intent or done with callous indifference to Ames's Fourth Amendment rights. But we disagree with the district court's conclusion that there was *no* basis in the record to suspect that Defendant Bruning's proffered reason for the decision to remove Ames's pants was false. Viewing the evidence in the light most favorable to Ames, a reasonable jury could conclude that Defendant Bruning was not motivated by safety concerns but instead acted objectively unreasonably and with

the subjective intent necessary to subject him to punitive damages liability.[11]

The following material facts, viewed collectively, raise triable issues regarding whether Defendant Bruning may be liable for punitive damages in this case: There is no evidence in the summary judgment record to suggest that the clothing of each of the men removed from the trailer appeared equally contaminated, and yet Defendant Bruning made the decision to strip all three of them of their clothing. Additionally, according to Ames, the officers removed Ames's pants but did not remove his tee-shirt. Defendant Bruning asserts that he made the decision to remove Ames's clothes based on the dangers to the officers and arrestees posed by the contaminated clothing. If a jury believed that Ames was permitted to continue wearing his tee-shirt (and that the tee-shirt was similarly contaminated), it would undercut Defendant Bruning's assertion.

Additionally, Ames claims that his removed clothing was not bagged up and taken from the scene with the other lab items. This evidence is supported by Jeffery Ames's testimony that he retrieved his father's pants from the Jesters' trailer the next day. According to Defendant Bruning, a person's contact with contaminated clothing could be lethal, and yet the officers left the clothing they believed to be potentially lethally contaminated at the Jesters' residence. If a jury

---

[11] Defendant Bruning did not participate in or supervise Ames's transport to and detention at the Logan County jail. He therefore is not liable for anything that may have occurred when Ames was in the Logan County officers' control. However, we reiterate the district court's concern about Ames's treatment while he was in the custody of the Logan County Sheriff's office.

believed Jeffery Ames's testimony, it could reasonably infer that Defendant Bruning's stated motive in removing Ames's clothing was pretext.

Most compelling is the fact that Ames was not provided with any extra clothing or covering. Jeffrey Ames found a duffle bag of Ames's clothing in the Jesters' trailer the day after Ames's arrest. Although Defendant Bruning testified that no clothes from inside the trailer could be made available to Ames because the officers could not go back in the house, officers in proper protective gear entered and exited the trailer throughout the search while Ames stood naked in front of it. Nothing in the summary judgment record indicates that the clothing in the trailer appeared similarly stained or dirty.

Finally, in an affidavit, Ames asserts that:

Once I made it to the front steps [of the Jesters' residence] I was taken over to and by the drivers [sic] side of Todd's pickup truck where one of the cops stated to another one in a smartelicky [sic] intimidating and proovoking [sic] marner [sic] "Why do those clothes look centaminated [sic]?" While another officer laughed and said "Yes we better strip them!"

Ames further contends that he was teased and taunted while his clothing was removed and once he was partially nude. The evidence suggests Defendant Bruning was present during this taunting, which both casts doubt on his stated motive for removing Ames's clothing and suggests a causal link between the constitutional violation and Defendant Bruning's failure to supervise the officers he instructed to strip and detain Ames. See Worrell, 219 F.3d at 1214.

- 13 -

A reasonable jury could thus conclude that Defendant Bruning's decision to remove Ames's pants or the manner in which he subsequently detained Ames was objectively unreasonable. A reasonable jury could also conclude that Defendant Bruning acted with an evil intent or callous indifference to Ames's Fourth Amendment rights. We therefore reverse this part of the district court's summary judgment order.

## II.

Ames also asserts that the district court erred in denying his motion for reconsideration. We review such a denial for an abuse of discretion. Price v. Philpot, 420 F.3d 1158, 1167 (10th Cir. 2005). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Because none of these grounds exist here, we affirm the district court's denial of Ames's motion for reconsideration.

## III.

Ames also contends that: 1) the trial court erred in granting Defendants Brown and Bruning's motion to be excused from the settlement conference; 2) the district court erred in denying Ames's motion to amend his complaint to allege physical injury; and 3) the district court erred in dismissing his compensatory damages claims. When an appellant designates only certain issues or orders as

the "part thereof being appealed," Fed. R. App. P. 3(c)(1)(B), we construe the notice of appeal strictly. See Cunico v. Pueblo. Sch. Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990). Ames's notice of appeal specifically designates only the district court's October 24 summary judgment order and its November 18 order denying Ames's motion for reconsideration of the court's October 24 order. Our jurisdiction thus does not extend to the other matters Ames wishes to appeal. Id.

In any event, we would affirm the district court's orders. See Soma Medical Intern v. Standard Chartered Bank, 196 F.3d 1292, 1300 (10th Cir. 1999). First, Defendants Brown and Bruning's motion to be excused from the settlement conference was not granted; instead, it was denied as moot because the court had already granted summary judgment. Second, in light of the untimeliness of Ames's attempt to assert physical injuries and the considerable time and resources spent addressing Ames's claims in the context initially presented, we would conclude that the district court did not abuse its discretion in denying his motion to amend.[12] Duncan v. Manager, Dept. of Safety, City and

_____

[12] Ames's original complaint did not include claims for physical injuries. Defendants' motions to dismiss specifically pointed out this defect. In Ames's responses, he did not contradict Defendants' statements and instead admitted that he was only alleging claims for mental or emotional injuries. A magistrate judge recommended that Defendants' motions to dismiss be granted in part based explicitly upon Ames's lack of alleged physical injuries. In his objections to that report, Ames did not contradict the finding that he did not allege physical injuries and instead argued that he was not subject to the physical injury requirements of 42 U.S.C. § 1997e(e). The district court adopted the magistrate judge's recommendations and dismissed all claims, except Ames's punitive damages

(continued...)

County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005) ("[U]ntimeliness alone is an adequate reason to refuse leave to amend."). Finally, we would agree that Ames is subject to the physical injury requirement of § 1997e(e) and thus conclude that Ames may not recover compensatory damages for his § 1983 claim.[13] See Robbins v. Chronister, 435 F.3d 1238, 1239, 1244 (10th Cir. 2006) (en banc) (holding that an attorney's fees provision of PLRA, which contains the same "by a prisoner who is confined to jail, prison, or other correctional facility" language, applied to a § 1983 action instituted by a prisoner based on an incident predating his incarceration). See 42 U.S.C. § 1997e(d)&(e).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Defendants Brown, Metcalf, and Higgins; we REVERSE the district court's grant of summary judgment in favor of Defendant Bruning; and we REMAND for further proceedings consistent with this order and judgment.

---

[12](...continued)
claim, based in part on the lack of physical injury. Only then, nearly a year after filing his initial complaint, did Ames file his motion to amend.

[13] Although Ames may not recover compensatory damages, we have previously held that Congress did not intend § 1997e(e) to restrict punitive damages recovery. Searles, 251 F.3d at 881 ("[T]he salient fact is that Congress simply did not choose [in the PLRA] to provide a restriction on punitive damages.") (emphasis added).

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge